NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1217
_____

RAFAEL IGNACIO GUERRERO,
a/k/a RAFAEL IGNACIO GUERRO-SANCHEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A076-736-498)
Immigration Judge: Honorable Roxanne C. Hladylowycz
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 18, 2016

Before: SHWARTZ, COWEN and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 30, 2016)
_____

AMENDED OPINION[*]
_____

PER CURIAM

    Rafael Guererro, proceeding pro se and in forma pauperis, petitions for review of

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

the Board of Immigration Appeals' (BIA) final order of removal. For the following reasons, we will grant the petition for review.

I.

Guerrero, a citizen of Mexico, attempted to enter the United States in January 1998 by presenting a fraudulent birth certificate. An immigration officer at the border determined that he was inadmissible for having sought admission by fraud or misrepresentation, see 8 U.S.C. § 1182(a)(6)(C)(i), and immediately returned him to Mexico pursuant to an expedited removal order, see id. § 1225(b)(1). Guerrero re-entered the United States illegally on an unknown date.

In April 2012, Guerrero was arrested for his role in an eastern Idaho drug trafficking organization. Guerrero pleaded guilty to conspiracy to distribute in excess of 50 grams of methamphetamine, and was sentenced to forty-two months' imprisonment. See 21 U.S.C. §§ 846, 841(a)(1). The Department of Homeland Security (DHS) then reinstated the expedited removal order issued against him in 1998. At that time, Guerrero expressed a fear of returning to Mexico and was referred to a DHS asylum officer for a reasonable-fear interview. See 8 C.F.R. § 241.8(e). Following the interview, the asylum officer determined that Guerrero's fear of persecution was reasonable and referred the matter to an Immigration Judge (IJ). See id. § 1208.31(b)-(e). Guerrero requested deferral of removal under the Convention Against Torture (CAT).[1] See id. § 1208.16.

---

[1] Guerrero also applied for withholding of removal under 8 U.S.C. § 1231(b)(3). The IJ later determined that he was ineligible for such relief because his drug trafficking conviction was a "particularly serious crime" within the meaning of 8 U.S.C.

2

At the hearing, Guerrero testified that he was afraid to return to Mexico because members of a drug cartel based in Sinaloa were looking for him. Guerrero explained that prior to his arrest in 2012, he had been helping the cartel transport drugs into the country. During this time, one of his drivers disappeared with money owed to the cartel. According to Guerrero, the cartel held him responsible for the theft and threatened him.

Guerrero further testified that, while he was serving his federal sentence in the United States, members of the cartel in his home state of Sonora had kidnapped and beaten his brother. The kidnappers warned Guerrero's brother that they were awaiting Guerrero's return. Guerrero testified that his brother had filed a police report (which Guerrero submitted into evidence), but claimed that the police did not investigate the crime or make any arrests.

Guerrero told the court that law enforcement in Mexico would not be able to protect him if he were forced to return because the Mexican government has been infiltrated by the Sinaloa cartel. In support of these allegations, Guerrero submitted several reports issued by the State Department, including its 2014 Report on Human Rights Practices for Mexico, its 2015 International Narcotics Control Strategy Report on Mexico, as well as a Travel Warning issued on May 5, 2015. He also submitted a number of news articles concerning cartels and corruption in Mexico.

Following the hearing, the IJ determined that Guerrero had failed to meet his burden under the CAT because he had not demonstrated that it was more likely than not

§ 1231(b)(3)(B)(ii). Guerrero did not seek administrative review of his withholding claim, and he does not attempt to obtain review of it here.

that he would be tortured by, or with the acquiescence of, the Mexican government if forced to return. See 8 C.F.R. § 1208.16(c)(2). Guerrero filed an administrative appeal. Upon review, the BIA affirmed the IJ's decision and dismissed the appeal.[2]

Guerrero now petitions for review of the BIA's order.

## II.

We have jurisdiction over this petition pursuant to 8 U.S.C. § 1252(a)(1). "When, as here, the BIA affirms an IJ's decision and adds analysis of its own, we review both the IJ's and the BIA's decisions." Martinez v. Att'y Gen., 693 F.3d 408, 411 (3d Cir. 2012). We review the agency's factual findings for substantial evidence, Cheng v. Att'y Gen., 623 F.3d 175, 182 (3d Cir. 2010), and uphold those findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "We review de novo constitutional claims or questions of law and the application of law to facts with appropriate agency deference." Yusupov v. Att'y Gen., 650 F.3d 968, 977 (3d Cir. 2011).

The CAT prevents the United States government from removing an alien to a country where an alien will face torture. See 8 C.F.R. § 1208.16(c)(2). To meet his burden under the CAT, the applicant bears the burden of establishing, through objective evidence, "that it is more likely than not" that he will be tortured if removed. 8 C.F.R.

---

[2] In affirming the IJ's decision, the BIA declined to consider two news articles that Guerrero had submitted for the first time on appeal, and further declined to remand the matter for the IJ to consider them in the first instance. Guerrero does not challenge those rulings here.

§ 1208.16(c)(2); see Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining . . . information or a confession, punish[ment] . . . for an act, . . . intimidat[ion] or coerci[on], or for any reason based on discrimination of any kind." 8 C.F.R. § 1208.18(a)(1).

The implementing regulations make clear that torture must be "inflicted by or at the instigation of or with the consent or acquiescence of" an official person. 8 C.F.R. § 1208.18(a)(1) (emphasis added). The "acquiescence" requirement is met when "the public official, prior to the activity constituting torture, ha[s] awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). Notably, however, such "awareness" need not be actual awareness. Rather, this Court has held that a government acquiesces to torture if it is "willfully blind" to such activities; "[f]or purposes of CAT claims, acquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it." Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007); see also Roye v. Att'y Gen., 693 F.3d 333, 343-44 (3d Cir. 2012).

Guerrero claims that he will be tortured if forced to return to Mexico because the Sinaloa cartel is looking for him and the government will not, or cannot, protect him. The IJ found Guerrero generally credible, and did not dispute his testimony that his brother had been targeted by men looking for Guerrero. In addition, after reviewing the country conditions evidence, the IJ recognized that the Sinaloa cartel is one of the most powerful and violent criminal organizations in Mexico, and that there are high rates of

5

violence in Guerrero's home state. The IJ also recognized that the Mexican government has struggled to control the extreme violence of the cartel and government corruption. Nonetheless, the IJ concluded that, even if Guerrero were able to demonstrate that he likely would be tortured by the Sinaloa cartel if forced to return to Mexico, he had not demonstrated that the government would acquiesce in such torture because the Mexican government is making efforts to combat the drug cartels and root out corruption. The BIA agreed.

The agency construed the "acquiescence" standard too narrowly. In emphasizing the Mexican government's efforts to combat the drug cartels and root out corruption, the IJ assumed that as long as the government is attempting to help its citizens, Guerrero cannot establish that a public official or other person acting in an official capacity would acquiesce in his torture at the hands of the cartel. We have recognized, however, that the "awareness" prong of acquiescence can be met by a showing that some elements of the government are in a collusive relationship with the torturers—even if the government generally opposes the groups. See, e.g., Pieschacon-Villegas v. Att'y Gen., 671 F.3d 303, 312 (3d Cir. 2011) (remanding to determine, inter alia, whether petitioner could establish acquiescence despite evidence that the Colombian government had made efforts to demobilize the FARC and AUC and control corruption); Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 351 (3d Cir. 2008) (holding that two government representatives each telling the petitioner that "there was nothing they could do to protect her" from the FARC "may be circumstantial evidence that the Colombian government was willfully blind to such treatment and that to pursue official assistance would have been futile");

6

Silva-Rengifo, 473 F.3d at 69-70 (rejecting BIA's conclusion that acquiescence requires actual knowledge of torturous activity, and remanding for determination as to whether record demonstrated that public officials in Colombia would turn a blind eye to violence by paramilitary and guerilla forces) (citing Zheng v. Ashcroft, 332 F.3d 1186, 1194 (9th Cir. 2003) (remanding to consider evidence that Chinese police accepted bribes from, and socialized with, snakeheads, and that the Chinese government fails to prosecute officials charged with human rights offenses)). In light of this precedent, the BIA erred by failing to consider whether the record evidence of the violence caused by the Sinaloa cartel and corruption of law enforcement officials demonstrated that it is more likely than not that Guerrero will be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). If it is, Guerrero may have met his burden under the CAT.

III.

We have considered the Government's arguments in opposition to the petition for review, and conclude that they lack merit. Accordingly, for these reasons set forth above, we will grant the petition for review, vacate the BIA's order, and remand for further consideration in light of this opinion.[3]

---

[3] In affirming the IJ's decision, the BIA stated as follows: "Although the applicant may reasonably fear harm in Mexico by members of a drug cartel or by corrupt police officers, the [IJ's] conclusion that the record does not indicate that it is more likely than not that he will face torture by or with the acquiescence (to include the concept of willful blindness) of an official of the government of Mexico upon return to that country is not clearly erroneous." (AR000002) (emphasis added). Upon remand, the BIA should clarify whether there is a legal component to the acquiescence determination giving rise to de

<u>novo</u> agency review.  <u>See</u> 8 C.F.R. § 1003.1(d)(3) (providing that the BIA reviews questions of law de novo, but findings of fact under a "clearly erroneous" standard").