PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 16-4134 & 17-1390
_____

RAFAEL IGNACIO GUERRERO-SANCHEZ

v.

WARDEN YORK COUNTY PRISON;
DISTRICT DIRECTOR PHILADELPHIA FIELD OFFICE;
JACQUELINE OSTERLIND; THOMAS S.
WINKOWASKI;
SECRETARY UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 1:15-cv-02423)
District Judge: Honorable William W. Caldwell
_____

Argued April 18, 2018
_____

Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*.

(Opinion Filed:  September 26, 2018)
_____

OPINION
_____

Chad A. Readler
William C. Peachey
Sarah Fabian
Joseph A. Darrow [Argued]
United States Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
        *Counsel for Appellants*

Daniel B. Conklin [Argued]
The Shagin Law Group
120 South Street
Harrisburg, PA 17101
        *Counsel for Appellee*

Witold J. Walczak
247 Ft. Pitt Blvd.
2nd Floor
Pittsburgh, PA 1522
        *Counsel for Amici Appellee, American Civil Liberties Union of Pennsylvania*

Golnaz Fakhimi
P.O. Box 60173
Philadelphia, PA 19102
   *Counsel for Amici Appellee, American Civil Liberties*
   *Union of Pennsylvania*

Michael Tan
Judy Rabinovitz
125 Broad Street
18th Floor
New York, NY 10004
   *Counsel for Amici Appellee, American Civil Liberties*
   *Union Foundation Immigrants' Rights Project*

Farrin R. Anello
Edward Barocas
Jeanne LoCicero
89 Market Street'
7th floor
P.O. Box 32159
Newark, NJ 07102
   *Counsel for Amici Appellee, American Civil Liberties*
   *Union of New Jersey Foundation*

Trina Realmuto
100 Summer Street
23rd Floor
Boston, MA 02110
   *Counsel for Amici Appellee, American Immigration*
   *Counsel*

Mark R. Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
*Counsel for Amici Appellee, American Immigration Lawyers Association*

GREENAWAY, JR., *Circuit Judge*.

Rafael Guerrero-Sanchez, a native and citizen of Mexico whose original removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), was detained by Immigration and Customs Enforcement ("ICE") from May 2015 to February 2017 while he awaited the Immigration Court's decision on whether he would be afforded country-specific protection from removal. The District Court determined that his detention was governed by the pre-removal detention provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a), which affords aliens a right to a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings. At the hearing, the District Court determined that Guerrero-Sanchez posed neither a flight risk nor a danger to society, and therefore released him on bail after 637 days in civil confinement.

The Government appeals solely the District Court's determination of the source of Guerrero-Sanchez's detention, which it contends is 8 U.S.C. § 1231(a), the post-removal detention authority provision of the INA. In stark contrast to § 1226(a), the text of § 1231(a) does not explicitly authorize a bond hearing. Guerrero-Sanchez, however, contends that his detention raises constitutional concerns even under § 1231(a),

4

and therefore that Congress implicitly intended for that provision to compel a bond hearing after prolonged detention. Thus, in Guerrero-Sanchez's estimation, he was owed a bond hearing regardless of the statutory source of his detention.

Accordingly, this case requires us to decide a novel question of immigration law in this Circuit: is the detention of an alien, such as Guerrero-Sanchez, who has a reinstated order of removal but is also pursuing withholding-only relief governed by § 1226(a) or § 1231(a)? If the former, then such aliens are statutorily permitted to a bond hearing. But if we find that § 1231(a) controls, then we must answer a second question: does § 1231(a)(6) compel an implicit bond hearing requirement after prolonged detention?

For the reasons discussed below, we hold that § 1231(a) governs Guerrero-Sanchez's detention and that § 1231(a)(6) affords a bond hearing after prolonged detention to any alien who falls within the ambit of that provision. We will therefore affirm on alternative grounds the District Court's decision to afford Guerrero-Sanchez a bond hearing.

## I.FACTS

Guerrero-Sanchez attempted to unlawfully enter the United States from Mexico on January 24, 1998 by presenting a fraudulent birth certificate. U.S. Customs and Border Protection determined that he was inadmissible for having sought admission by fraud or misrepresentation, in violation of 8 U.S.C. § 1182(a)(6)(C)(ii). An expedited order of removal was entered against him, *see* 8 U.S.C. § 1225(b)(1)(A)(i), and he was immediately removed back to Mexico.

At an unknown date thereafter, Guerrero-Sanchez re-entered the United States without inspection. In April 2012, he was arrested for his role in an Idaho-based drug trafficking organization. Guerrero-Sanchez pled guilty to one count of conspiracy to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and he was sentenced to forty-two months of imprisonment. While Guerrero-Sanchez was serving that sentence, ICE reinstated his original order of removal from 1998, pursuant to 8 U.S.C. § 1231(a)(5). On April 9, 2015, Guerrero-Sanchez filed before this Court a petition for review and motion for stay of the reinstated removal order, which were denied.

On May 19, 2015, the date that Guerrero-Sanchez completed his sentence, he was transferred to ICE custody pending his removal. An asylum officer subsequently conducted a reasonable-fear interview at Guerrero-Sanchez's request, *see* 8 C.F.R. § 241.8(e), where Guerrero-Sanchez contended that he would be tortured by a drug cartel if removed to Mexico. The officer concluded that Guerrero-Sanchez's fear of persecution was reasonable and referred the matter to an immigration judge. *See* 8 C.F.R. § 1208.31(e).

Guerrero-Sanchez subsequently initiated withholding-only proceedings before the Immigration Court, seeking an order either withholding his removal to Mexico pursuant to 8 U.S.C. § 1231(b)(3) or, in the alternative, deferring his removal under the Convention Against Torture ("CAT"). The Immigration Judge denied both claims, finding that he was ineligible for relief under § 1231(b)(3) because he committed a "particularly serious crime," *see* § 1231(b)(3)(B)(ii), and that he did not qualify for CAT relief because he did "not [meet] his burden of establishing by a preponderance of the evidence

6

that the Mexican Government would consent to or be willfully blind to [his] hypothetical torture . . . ." App. 120. Guerrero-Sanchez appealed the denial of his CAT claim to the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Judge. He then petitioned this Court for review of the BIA's order, and we stayed his removal pending the disposition of his appeal.

We granted the petition of review, finding that "the BIA erred by failing to consider whether the record evidence of the violence caused by the [drug] cartel and corruption of law enforcement officials demonstrated that it is more likely than not that Guerrero will be tortured 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Guerrero v. Attorney Gen.*, 672 F. App'x 188, 191 (3d Cir. 2016) (quoting 8 C.F.R. § 1208.18(a)(1)). We therefore vacated the BIA's order and remanded for further consideration.

On December 17, 2015, while his case remained pending before the BIA, Guerrero-Sanchez filed a petition for a writ of habeas corpus before the District Court, challenging his detention by ICE while he waits for a determination on whether he will be afforded country-specific protection from removal. To date, his withholding-only proceeding is not scheduled until September 5, 2019, which is fifty-three months from the date that he was originally detained by ICE. On September 19, 2016, the District Court granted the petition, finding that Guerrero-Sanchez was statutorily permitted to a bond hearing because his detention was governed by the pre-removal order detention statute, 8 U.S.C. § 1226(a), rather than the post-removal statute, 8 U.S.C. § 1231(a). The District Court therefore ordered that the Immigration Judge afford Guerrero-Sanchez a hearing within twenty-one days.

7

At the hearing, the Immigration Judge denied Guerrero-Sanchez release on bond, finding that he represented a flight risk and/or danger to the community. Following the bond hearing before the Immigration Judge, Guerrero-Sanchez filed a motion to reconsider and "to enforce" the District Court's order, claiming that the bond hearing had been legally deficient and requesting that the District Court conduct the hearing itself. The District Court granted the motion in part on December 23, 2016, finding that the bond hearing was legally insufficient because it was not individualized, did not account for the evidence of rehabilitation that Guerrero-Sanchez provided, and that it was "doubtful" that the Government carried its burden of proof that he is a flight risk or a danger to the community. App. 40.

The District Court then, in February 2017, held a bond hearing itself. It found that Guerrero-Sanchez did not pose a danger to the community because of "the absence of any criminal history beyond his drug conspiracy conviction, acceptance of responsibility for his criminal conduct, extensive evidence of rehabilitation and good conduct while incarcerated and detained, multiple offers of support from family and employers if he were to be released, and numerous sworn statements attesting to [his] good character." App. 19. The District Court also determined that Guerrero-Sanchez was not a flight risk because he has a wife and daughter living in Las Vegas, Nevada, that he was pursuing a bona fide withholding of removal claim before the Immigration Court, and that the conditions of release would assure that he appeared at future immigration proceedings. It therefore ordered his immediate release subject to conditions of supervision. In total, Guerrero-

8

Sanchez had remained in ICE detention for 637 days without a bond hearing.[1]

## II. THE AUTHORITY GOVERNING GUERRERO-SANCHEZ'S DETENTION

The Government originally appealed the District Court's order holding that 8 U.S.C. § 1226(a) governs Guerrero-Sanchez's detention, as well as the orders mandating a de novo hearing in federal court and releasing him on bond. It then withdrew its appeals of the latter two determinations. Thus, the Government now contests only the statutory basis of Guerrero-Sanchez's detention. In the Government's view, it is not the pre-removal detention provision, 8 U.S.C. § 1226(a), that controls in Guerrero-Sanchez's case, but rather, the post-removal detention provision, 8 U.S.C. § 1231(a). Because § 1231(a) contains no explicit bond hearing requirement, the Government argues that such a hearing should have never been held, and that the Government should have the authority to detain Guerrero-Sanchez again.[2] For his part, Guerrero-

---

[1] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 2241, and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

[2] In the alternative, the Government argues that, should § 1226 govern, then a different subsection of the provision—§ 1226(c)—applies. That subsection "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). It provides that the "Attorney General shall take into custody any alien," who commits one of various enumerated categories of criminal and terrorist offenses, 8 U.S.C. § 1226(c), including a violation of "any law or regulation of a State, the United States, or a

Sanchez contends that the District Court was correct in concluding that § 1226(a) applies, but that even if § 1231(a) governs, he was still entitled to a bond hearing because § 1231(a)(6) implicitly requires a bond hearing after prolonged detention. Thus, according to Guerrero-Sanchez, he was entitled to a bond hearing irrespective of the statutory authority for his detention, and he should remain released subject to the conditions of supervision already in place.

With all of this in mind, we must first decide whether Guerrero-Sanchez's detention is governed by § 1226(a) or § 1231(a). Because this question is an issue of statutory interpretation, it is subject to de novo review. *Fair Hous. Rights Ctr. in Se. Pa. v. Post Goldtex GP, LLC*, 823 F.3d 209, 213 (3d Cir. 2016). For the reasons discussed below, we hold that § 1231(a), the post-removal provision, controls. We will then proceed to address Guerrero-Sanchez's alternative argument, that is, whether § 1231(a)(6) implicitly requires that he be afforded a bond hearing after prolonged detention.

A.    Legal Framework

We begin by examining the text of both provisions. *See, e.g.*, *United States v. Thornhill*, 759 F.3d 299, 307 (3d Cir. 2014) ("Statutory interpretation requires that we begin with a

foreign country relating to a controlled substance," *id.* § 1227(a)(2)(B)(i). If an alien falls within the ambit of § 1226(c), then no bond hearing is provided and the alien's "detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 138 S. Ct. at 847 (quoting 8 U.S.C. § 1226(c)).

10

careful reading of the text." (quoting *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 177 (3d Cir. 2013))).  Section 1226 is the pre-removal provision of the INA and "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). It provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Critical for the purposes of this case, an alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings.  *See Jennings*, 138 S. Ct. at 837 ("[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond . . . or conditional parole.'" (quoting 8 U.S.C. § 1226(a))); 8 C.F.R. § 236.1(d)(1) ("[T]he immigration judge is authorized to exercise the authority . . . to detain the alien in custody, release the alien, and determine the amount of bond.").

Section 1231(a) is the post-removal detention provision of the INA and applies to aliens who are subject to a final order of removal.  It provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  The provision requires that the alien be detained during this 90-day timeframe, *see* 8 U.S.C. § 1231(a)(2), which is "referred to as the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A).  "If the alien does not leave or is not removed within the removal period," then he is normally subject to supervised release.  8 U.S.C. § 1231(a)(3).  Section 1231(a)(6), however, authorizes the continued detention of certain classes of aliens "beyond the removal period," 8 U.S.C. § 1231(a)(6), for a timeframe "reasonably necessary to bring

11

about that alien's removal from the United States," *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *see also id.* at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The categories of aliens covered by § 1231(a)(6) include those who, like Guerrero-Sanchez, are inadmissible under 8 U.S.C. § 1182.[3]

Critically, unlike § 1226(a), the text of § 1231(a)(6) does not explicitly authorize a bond hearing. Therefore, at least according to the Government, whether Guerrero-Sanchez is entitled to a bond hearing turns on whether § 1226(a) or § 1231(a) authorizes his detention. We note at the outset that this is a question that has divided our sister circuits. *Compare Padilla-Ramirez*, 882 F.3d 826, 832 (9th Cir. 2017) (holding that § 1231(a) governs), *with Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) (holding that § 1226(a) governs).

B.    *Chevron* Deference

As a threshold matter, the Government contends that a regulation issued by the Department of Homeland Security, 8 C.F.R. § 241.8(f), is owed *Chevron* deference because it allegedly provides that § 1231(a) applies to aliens with reinstated orders of removal.[4] We disagree. That regulation

---

[3] The other classes of aliens covered by § 1231(a)(6) are those removable under § 8 U.S.C. 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), and those who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal," 8 U.S.C. § 1231(a)(6).

[4] "Under the familiar two-step *Chevron* inquiry, first, if the statute is clear we must give effect to Congress'

12

states that "[e]xecution of the reinstated order of removal and detention of the alien shall be administered in accordance with" Part 241 of the Code of Federal Regulations, which contains the regulations implementing 8 U.S.C. § 1231. 8 C.F.R. § 241.8(f). The relevant provisions of Part 241, however, apply to aliens who are subject to reinstated removal orders but, unlike Guerrero-Sanchez, have either not expressed a fear of removal, or have already been granted withholding but are still subject to detention. *See id.* §§ 241.3, 241.4(b)(3), 241.8(f). Conspicuously absent from these regulations is any mention of aliens, who like Guerrero-Sanchez, have reinstated removal orders but are still pursuing bona fide withholding-only relief. *Chevron* deference is inapplicable, then, because § 241.8(f) does not resolve the question of whether § 1226(a) or § 1231(a) governs Guerrero-Sanchez's detention. *See Padilla-Ramirez v. Bible*, 882 F.3d at 831 (declining to defer to 8 C.F.R. § 241.8(f) "because the regulation does not answer the question presented"); *Guerra*, 831 F.3d at 63 ("*Chevron* deference is inapplicable because [Part 241] do[es] not answer the question of which provision governs Guerra's detention."). We must therefore conduct our own scrutiny of the statutory provisions.

---

unambiguous intent, and, second, if the statute is silent or ambiguous with respect to a specific issue, we defer to an implementing agency's reasonable interpretation of that statute." *De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348 (3d Cir. 2010) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984)).

C.      Authorization of Detention

To determine whether Guerrero-Sanchez was entitled to a bond hearing, we must ascertain the source of authority for his detention.  The authorization for an alien's detention shifts from § 1226(a) to § 1231(a)—that is, from the pre-removal phase to the post-removal phase—at the point that the alien's order of removal becomes administratively final and removal is therefore certain.  *See* 8 U.S.C. § 1231(a)(1)(B).  Thus, which provision governs here depends on whether the removal order entered against Guerrero-Sanchez is administratively final: if it is final, then § 1231(a) applies; otherwise, § 1226(a) controls.

Crucial to this determination is the fact that Guerrero-Sanchez's removal order was reinstated "from its original date and is not subject to being reopened or reviewed."  8 U.S.C. § 1231(a)(5).[5]   Although aliens with reinstated orders of

---

[5] Section 1231(a)(5) provides in its entirety:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at

14

removal are "not eligible and may not apply for any relief" under Chapter 12 of the INA, *id.*, they may seek withholding-only remedies, *see Cazun v. Attorney Gen. United States*, 856 F.3d 249, 255-56 (3d Cir. 2017) ("[P]recedent and the Attorney General's own interpretation clarify that withholding from removal and CAT protection—both forms of relief—are actually still available to individuals in reinstatement proceedings." (citing *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006); 8 C.F.R. §§ 1208.31(e), 1208.16(c)(4))). Accordingly, in order to resolve this case, we must decide whether a reinstated order of removal against an alien who, like Guerrero-Sanchez, is pursuing bona fide withholding-only relief is administratively final.

With this framing of the issue in mind, we find that § 1231(a), the post-removal provision, is the more logical source of authority for Guerrero-Sanchez's detention. A removal order is unquestionably final when it is first entered. *See* 8 C.F.R. § 241.1. When such an order is subsequently reinstated, as happened here in Guerrero-Sanchez's case, "it stands to reason that it retains the same administrative finality because section 1231(a)(5) proscribes any challenge that might affect the status of the underlying removal order." *Padilla-Ramirez*, 882 F.3d at 831. Indeed, when a reinstated order of removal is in place, withholding-only proceedings do not disturb the underlying order of removal; rather, they only potentially impede the order's execution with respect to a specific country. *See* § 1208.2(c)(3)(i). If Guerrero-Sanchez were to ultimately prevail on either his withholding or CAT

any time after the reentry.

8 U.S.C. § 1231(a)(5).

claim, the resulting remedy would prohibit only his removal to the country of risk: Mexico. It would not prohibit his removal from the United States to an alternative, non-risk country. *See, e.g.*, *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (stating that a grant of withholding "only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country" (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003), holding modified by *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006))). Thus, "[t]he removal order itself . . . is not at issue in the withholding-only proceedings, meaning that those proceedings cannot diminish or otherwise affect its finality." *Padilla-Ramirez*, 882 F.3d at 832.

Furthermore, the placement of § 1231(a)(5), which governs reinstated orders of removal, within the post-removal provision itself evidences Congress's intent that § 1231(a) governs the detention of aliens with reinstated orders of removal, even when they pursue withholding-only proceedings. *See id.*; *see also, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) ("Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure'" (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977))). The Ninth Circuit, which held that such detentions were authorized by § 1231(a), did so in part on this basis. *Padilla-Ramirez*, 882 F.3d at 832 ("The fact that the reinstatement provision appears among section 1231(a)'s detention and supervision provisions further bolsters this inference.").

Conversely, we are compelled to find that the plain text of the pre-removal provision, § 1226(a), forecloses its application to reinstated removal orders. Critically, for that provision to apply there must be a decision "pending" before

an immigration judge as to "whether the alien is to be removed *from the United States*." 8 U.S.C. § 1226(a) (emphasis added). No such decision is pending here. As discussed above, the decision that was before the Immigration Judge was not whether Guerrero-Sanchez should be removed "from the United States"—as is required to trigger § 1226(a)—but rather, whether he may be removed to Mexico, i.e., *to where* he should be removed. "This narrow question of *to where* an alien may be removed is distinct from the broader question of *whether* the alien may be removed; indeed, the former inquiry requires that the latter already have been resolved in the affirmative." *Padilla-Ramirez*, 882 F.3d at 832. Because Guerrero-Sanchez's CAT claim casts no doubt on his removal from the United States, it does not implicate § 1226(a). *See id.* ("The fact that [an alien] may seek further withholding relief if he prevails on his present application does not change this conclusion since the pending decision in such hypothetical proceedings always will be whether he can be removed to a particular country, which does not implicate section 1226(a).").

Accordingly, we hold that a reinstated order of removal against an alien who has initiated withholding-only proceedings is administratively final.[6] Therefore, just as we

---

[6] It is worth noting that if § 1226 applied, there would be merit to the Government's argument that § 1226(c) would nonetheless—as a statutory matter—prohibit a bond hearing in Guerrero-Sanchez's case. As discussed *supra* note 2, § 1226(c) applies to the detention of aliens that have been convicted of certain qualifying offenses and does not afford a bond hearing unless the alien is released for witness protection purposes. *See Jennings*, 138 S. Ct. at 847. Here, Guerrero-

17

Sanchez pled guilty and was convicted under 21 U.S.C. §§ 846 and 841(a)(1) for conspiracy to distribute more than fifty grams of methamphetamine and was sentenced in April 2013 to forty-two months' imprisonment. That offense is a qualifying criminal conviction under § 1226(c), which provides that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B) . . . of this title." 8 U.S.C. § 1226(c)(1)(B). Relevant for Guerrero-Sanchez's case is § 1227(a)(2)(B)(i), which provides:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i). Because Guerrero-Sanchez's conviction related to more than fifty grams of methamphetamine, his detention would fall within the confines of § 1226(c). Since he offers no evidence that his release is pursuant to a witness protection purpose, he would be *statutorily* foreclosed from being afforded a bond hearing altogether if § 1226 applied. Whether Guerrero-Sanchez would be *constitutionally* entitled to a bond hearing under the

18

elect to follow *Padilla-Ramirez*, we concurrently decline to follow *Guerra*. In *Guerra*, the Second Circuit found that § 1226(a) governs because, although an alien subject to a reinstated removal order is clearly removable, the "purpose of withholding-only proceedings is to determine precisely whether 'the alien is to be removed from the United States.'" 831 F.3d at 62 (quoting 8 U.S.C. § 1226(a)). However, as discussed *supra*, we respectfully disagree with the Second Circuit's interpretation—the purpose of withholding-only proceedings is to determine the narrow question of where an alien will be removed to, but has no bearing on whether the alien will ultimately "be removed *from the United States*." 8 U.S.C. § 1226(a) (emphasis added). We agree with the Ninth Circuit that "[i]n concluding that the 'purpose of withholding-only proceedings is to determine precisely whether the alien is to be removed from the United States,' the [Second Circuit] did not paint with a fine enough brush." *Padilla-Ramirez*, 882 F.3d at 835 (citations and internal quotation marks omitted) (quoting *Guerra*, 831 F.3d at 62).

*Guerra* also reasoned that the reinstated removal order was not final because an alien could appeal a denial of a withholding application to a federal court of appeals. 831 F.3d at 63. On the basis that the conception of finality pertaining to judicial review must be the same as that which pertains to the

Due Process Clause is an entirely different question—a question that we need not resolve today because we hold that his detention is governed by § 1231(a). *See Jennings*, 138 S. Ct. at 847 (declining to decide whether the Due Process Clause requires a pre-removal bond hearing because the Supreme Court is "a court of review, not of first view" (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005))).

administrative finality of his removal order for detention purposes, the Second Circuit reasoned that a "bifurcated definition of finality" would "run[] counter to principles of administrative law which counsel that to be final, an agency action must 'mark the consummation of the agency's decisionmaking process.'" *Id.* (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S.Ct. 1807, 1813 (2016)). However, we disagree—as the Ninth Circuit aptly explained, the application of § 1231(a) here does not vitiate the administrative legal principles that the Second Circuit relies on:

> The Second Circuit is correct that only an agency action marking "the consummation of the agency's decisionmaking process" qualifies as final agency action. But its conclusion that no such consummation exists while withholding-only proceedings are ongoing again misunderstands the decision at stake in those proceedings. The agency already decided that Padilla–Ramirez "is to be removed from the United States," 8 U.S.C. § 1226(a), and a different, more limited decision is now pending in his withholding-only proceedings—namely, whether he may be removed to El Salvador. The agency has consummated its decision-making regarding the first issue, but not the second. It therefore is consonant with settled administrative legal principles to hold that Padilla–Ramirez's reinstated removal order (i.e., the agency's decision that he "is to be removed from the United States," *id.*) is final for detention purposes even though it lacks finality for

20

purposes of judicial review of his withholding-only claim.

*Padilla-Ramirez*, 882 F.3d at 836 (citations omitted); *see also Ponta-Garcia v. Att'y Gen.*, 557 F.3d 158, 162 (3d Cir. 2009) ("[A]liens subject to reinstatement have already been ordered removed, and thus have already been provided with the requisite procedures and review.").

In a similar vein, amici the American Immigration Council and the American Immigration Lawyers Association (collectively "AIC") contend that "[e]very circuit to have addressed the question [of finality] has agreed that a reinstatement order where the individual has articulated a fear of return is *not* final until reasonable fear or the withholding-only proceedings have been concluded." AIC Br. at 17-18 (citing *Ponce-Osorio v. Johnson*, 824 F.3d 502 (5th Cir. 2016); *Jimenez-Morales v. Att'y Gen.*, 821 F.3d 1307 (11th Cir. 2016), *cert. denied sub nom. Jimenez-Morales v. Lynch*, 137 S.Ct. 685 (2017); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1183 (10th Cir. 2015); *Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012)). However, none of these cases address the finality of reinstated deportation orders for the purposes of removal. Rather, they address whether such orders are final "for the purposes of timely petitioning for judicial review" of orders denying relief in a reasonable fear or withholding-only proceeding. *See, e.g.*, *Ortiz-Alfaro*, 694 F.3d at 958 (noting that validity of "the underlying prior removal order" was not before the court).[7]

---

[7] *See also Ponce-Osorio*, 824 F.3d at 507 ("The reinstatement order is thus non-final, and we lack jurisdiction over Ponce-Osorio's petition for review."); *Luna-Garcia*, 777 F.3d at 1185 (describing the issue as determining "the point at which a reinstated removal order becomes final for purposes of

These cases are therefore inapposite. AIC relies on the incorrect assumption that "the finality of a reinstatement order is identical for purposes of judicial review and detention." AIC Br. at 20. Indeed, it is telling that neither *Padilla-Ramirez* nor *Guerra*—both of which were decided after *Ponce-Osorio*, *Jimenez-Morales*, *Luna-Garcia*, and *Ortiz-Alfaro*—rely on any of these cases for support; to the contrary, they distinguish them.[8]

---

calculating the time to petition for review"); *Jimenez-Morales*, 821 F.3d at 1308 ("DHS' reinstatement of the 2011 order of removal was not final because the reasonable fear proceeding was ongoing. That presents a jurisdictional problem because the Immigration and Nationality Act vests circuit courts with jurisdiction to review only 'final' orders of removal.").

[8] In *Guerra*, when discussing that the court was deciding an issue of first impression, it stated "[t]he Ninth and Tenth Circuits have held that they lack jurisdiction over petitions for review filed while withholding-only proceedings are ongoing" but that "[n]either court, however, answered the question of which section authorized detention for aliens in Guerra's position." 831 F.3d at 62 n.1 (citing *Ortiz-Alfaro*, 694 F.3d at 958; *Luna-Garcia*, 777 F.3d at 1184).

In *Padilla-Ramirez*, the Ninth Circuit held that *Ortiz-Alfaro* "is readily distinguishable because its holding rested on the canon of constitutional avoidance." 882 F.3d at 833. Conversely, "[h]olding that Padilla-Ramirez's reinstated order is administratively final for detention purposes poses no such constitutional difficulty, so the avoidance canon need not dictate the outcome here." *Id.* Thus, "*Ortiz-Alfaro* . . . does

22

To summarize, Guerrero-Sanchez's detention is governed by § 1231(a). A reinstated removal order is administratively final for the purposes of removal because it provides that an alien "shall be removed" from the United States, and that determination is "not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). An alien with a reinstated order of removal therefore cannot have a decision "pending" before an immigration judge on "whether the alien is to be removed *from the United States.*" 8 U.S.C. § 1226(a) (emphasis added). As a result, such aliens cannot fulfill the necessary predicate to implicate § 1226(a), and they cannot rely on that provision to obtain a bond hearing.

### III. THE IMPLICIT BOND HEARING REQUIREMENT OF § 1231(a)(6)

Because § 1231(a) governs Guerrero-Sanchez's detention, we must next reach his alternative argument that he is still entitled to a bond hearing because that provision implicitly requires a bond hearing after prolonged detention.

---

not control the outcome of this case." *Id.* at 834. Notably, Guerrero-Sanchez relies on *Ortiz-Alfaro* for the proposition that a holding that the reinstated removal order is final would make it impossible for him to timely petition for review of an immigration judge's decision denying him relief. However, this portion of his case does not invoke the canon of constitutional avoidance because "the text and structure of the [INA] indicate that Congress intended for section 1231(a) to govern detention of aliens subject to reinstated removal orders." *Padilla-Ramirez*, 882 F.3d at 834. *Ortiz-Alfaro* is therefore inapposite.

For the reasons below, we agree and will affirm the District Court's order on this basis.

A.    *Zadvydas v. Davis*

As discussed *supra*, when an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory "removal period," during which time the alien normally is held in custody.   8 U.S.C. § 1231(a)(1)(A).   However, since Guerrero-Sanchez's detention lasted longer than 90 days, it was governed by § 1231(a)(6), which authorizes detention beyond the 90 days under certain circumstances.   It provides:

> An alien ordered removed [1] who is inadmissible . . . [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . .

8 U.S.C. § 1231(a)(6).   Noticeably, unlike § 1226(a), the text of § 1231(a)(6) does not explicitly authorize a bond hearing for aliens that are encompassed within its ambit.   Nor does § 1231(a)(6) contain any express limit on the duration of an alien's detention under the provision.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), however, the Supreme Court interpreted § 1231(a)(6) to authorize the

24

detention of aliens "only as long as 'reasonably necessary' to remove them from the country." *Clark v. Martinez*, 543 U.S. 371, 377 (2005) (quoting *Zadvydas*, 533 U.S. at 689, 699). Such an interpretation was required to avoid the "'serious constitutional threat' . . . posed by the indefinite detention of aliens who had been admitted to the country." *Id.* (quoting *Zadvydas*, 533 U.S. at 699). According to the Court, the provision's use of the word "may" was ambiguous because it "'suggests discretion,' but 'not necessarily . . . unlimited discretion." *Id.* (quoting *Zadvydas*, 533 U.S. at 699). Here, the Government argues that *Zadvydas* resolves the only ambiguity in the text of § 1231(a)(6) and makes clear that Guerrero-Sanchez "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Appellant Br. at 15 (quoting *Zadvydas*, 533 U.S. at 701).

We disagree. *Zadvydas* had no occasion to address the due process concerns posed by prolonged detention of someone in Guerrero-Sanchez's situation who is still seeking withholding-only relief. Rather, *Zadvydas* addressed only the detention of noncitizens who—unlike Guerrero-Sanchez—have exhausted all administrative and judicial challenges to removal, including applications for relief from removal, and are only waiting for their removal to be effectuated. *See Demore v. Kim*, 538 U.S. 510, 527 (2003) (distinguishing *Zadvydas* on the basis that "in *Zadvydas*, the aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable'" (quoting *Zadvydas*, 533 U.S. at 690)).

This distinction is material because detaining Guerrero-Sanchez without a bond hearing while he pursues his bona fide withholding-only claim "would effectively punish [him] for

25

pursuing applicable legal remedies."[9] *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 271 (3d Cir. 2012) (internal quotation marks omitted), *abrogated in part and on other grounds by Jennings*, 138 S. Ct. at 847. Thus, *Zadvydas'* focus on the foreseeability of removal—and its limiting construction of § 1231(a)(6) as authorizing detention only when removal is reasonably foreseeable—does not address or settle the due process concerns raised by the prolonged detention of an alien like Guerrero-Sanchez, who is still pursuing a bona fide withholding-only claim that could take years to resolve.

More importantly, *Zadvydas* narrowed the *scope* of the detention that § 1231(a)(6) authorizes. *See Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1248 (10th Cir. 2008) ("The Supreme Court [in *Zadvydas*], confronted with a very broad statute, narrowed its scope to avoid unconstitutionality" (quoting *Thai v. Ashcroft*, 389 F.3d 967, 971 (9th Cir. 2004) (Kozinski, J., dissenting from denial of *en banc*))). It did not, however, provide that the Court's limiting construction of § 1231(a)(6) is the sole constraint on detention that the Due

---

[9] The Government contends that Guerrero-Sanchez's confinement is not "'punishment' for pursuing withholding or deferral of removal to Mexico" because such detention is "nonpunitive in purpose and effect." Government Reply Br. at 18 (quoting *Zadvydas*, 533 U.S. at 690). However, "the reality [is] that merely calling a confinement 'civil detention' does not, of itself, meaningfully differentiate it from penal measures." *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015) (citing *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997); *Application of Gault*, 387 U.S. 1, 27 (1967)).

Process Clause requires.[10] *See id.* at 1249 ("In *Zadvydas*, the Supreme Court did not purport to 'resolve' the statutory ambiguity in § 1231(a)(6) once and for all. . . . In no way, . . . did the Court signal that its interpretation was the only reasonable construction of § 1231(a)(6)."); *id.* at 1248 ("[T]he Court's method of narrowing [§ 1231(a)(6) in *Zadvydas*] is not the only permissible one." (quoting *Thai*, 389 F.3d at 971 (Kozinski, J., dissenting from denial of *en banc*))). Indeed, a detention could still raise constitutional concerns even if it is ostensibly authorized by statute. *See Diouf v. Napolitano*, 634 F.3d 1081, 1084 (9th Cir. 2011) (invoking canon of constitutional avoidance to interpret § 1231(a)(6) after determining "that [the alien's] detention was authorized by statute"); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir. 2008) ("Even if [an alien's] continued detention is permitted by statute, however, due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" (quoting *Zadvydas*, 533 U.S. at 690-91)). While *Zadvydas* limited the *substantive scope* of § 1231(a)(6),

---

[10] To the contrary, *Zadvydas* provides that, even where detention is not indefinite, it still must bear a "reasonable relation" to the Government's interests in preventing flight and danger to the community and be accompanied by adequate procedures to determine if detention is necessary. 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); *see also id.* at 700 ("[I]f removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.").

27

it did not explicitly preclude courts from construing § 1231(a)(6) to include additional *procedural* protections during the statutorily authorized detention period, should those protections be necessary to avoid detention that could raise different constitutional concerns. *See Diouf*, 634 F.3d at 1084 (holding that "individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)").

B.      The Due Process Concerns Associated with Guerrero-Sanchez's Detention

Guerrero-Sanchez's detention without bond—which had spanned 637 days before his hearing—pending the resolution of his withholding-only proceedings raises serious due process concerns. *See Diouf*, 634 F.3d at 1086 ("[P]rolonged detention under § 1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns.'" (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008)); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 471 (3d Cir. 2015) ("The total number of days that Chavez–Alvarez has been held in civil detention since his arrest, of itself, gives us reason for pause."), *abrogated in part and on other grounds by Jennings*, 138 S. Ct. at 847.

We have already recognized in the pre-removal context that "when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011), *abrogated in part and on other grounds by Jennings*, 138 S.

28

Ct. at 847.[11]   In those cases, "due process requires us to recognize that, at a certain point—which may differ case

[11] In *Diop*, applying the canon of constitutional avoidance, we construed § 1226(c) to contain an implicit "reasonable" time limit on the period for which detention without a bond hearing was statutorily authorized.  656 F.3d at 231.  This statutory holding has been abrogated by *Jennings*, where the Court held that the text of § 1226(c) is clear and that "detention [under § 1226(c)] may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 138 S. Ct. at 847 (quoting 8 U.S.C. § 1226(c)).

*Diop*, however, also reached a constitutional holding and found that "when detention becomes unreasonable, the *Due Process Clause* demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute."  656 F.3d at 233 (emphasis added); *see also id.* at 223 ("[T]he Due Process Clause of the Fifth Amendment to the Constitution requires that the Government establish that continued detention is necessary to further the purposes of [§ 1226(c)]."); *id.* at 235 (holding that Diop's detention constituted "a violation of the Due Process Clause").  We reasoned, *inter alia*, that "[t]he constitutionality of [mandatory detention] is a function of the length of the detention" and that "[a]t a certain point, continued detention . . . *becomes unconstitutional* unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purpose of preventing flight and dangers to the community."  *Id.* at 232 (emphasis added).  Since we hold that Guerrero-Sanchez's detention is governed

by case—the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous." *Chavez-Alvarez*, 783 F.3d at 474–75 (footnote omitted); *see also Diop*, 656 F.3d at 232 ("At a certain point, continued detention becomes . . . unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.").

---

by § 1231(a)(6) and not § 1226(c), we have no occasion to determine here whether *Diop*'s constitutional holding survives *Jennings*.

However, the constitutional *concerns* that *Diop* identified with mandatory detention in the pre-removal context are similar to those in the post-removal context. *See Diouf*, 634 F.3d at 1087 ("Regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention."). And we need not determine that those concerns rise to the level of an outright constitutional violation in order to employ the canon of constitutional avoidance. Indeed, the entire purpose of the canon is to avoid reaching the merits of the constitutional issue. *See, e.g.*, *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 130–31 (3d Cir. 2005) ("[I]t is well established that courts have a duty to avoid passing upon a constitutional question if the case may be disposed of on some other ground." (quoting *Spicer v. Hilton*, 618 F.2d 232, 239 (3d Cir. 1980))). Accordingly, because we conclude that—unlike § 1226(c)—§ 1231(a)(6) is ambiguous, we will interpret the provision in a manner that does not raise the constitutional concerns that *Diop* identified.

30

We see no substantial distinction between the liberty interests of aliens detained under § 1226(a) and § 1231(a)(6) because "[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention"—accordingly, "[t]he liberty interests of persons detained under § 1231(a)(6) are comparable to those of persons detained under § 1226(a)." *Diouf*, 634 F.3d at 1087. The Government contends that individuals like Guerrero-Sanchez have a lesser liberty interest because they each have a prior removal order already in place. However, Guerrero-Sanchez's status is not appreciably different from that of the alien in *Diop*, who had a final removal order at the time we decided his case and was subjected to prolonged detention while pursuing— precisely like Guerrero-Sanchez—CAT relief, as well as withholding of removal. *See* 656 F.3d at 226 (explaining that the alien in *Diop* argued before the Immigration Court "that the vacatur of his conviction meant that he was eligible for withholding of removal" and that he made a "claim of a right to relief under the Convention Against Torture").

As to the Government's interest in detaining aliens in the post-removal context, we agree with the Ninth Circuit that "[t]he distinctions between § 1226(a) and § 1231(a)(6) . . . are not substantial enough to justify denying a bond hearing to all aliens subject to extended detention under § 1231(a)(6)." *Diouf*, 634 F.3d at 1087. As the Ninth Circuit aptly explained:

> First, the government has an interest in ensuring that aliens are available for removal if their legal challenges do not succeed whether they are detained under § 1226(a) or § 1231(a)(6). Second, in either circumstance, the government's interest in the prompt removal of aliens who have exhausted their legal challenges

31

is served by the bond hearing process itself. If the alien poses a flight risk, [continued] detention is permitted.

Third, the same concerns about prolonged detention arise irrespective of whether an alien has petitioned for review of an order of removal (direct review) or an order denying a motion to reopen (collateral review). In both situations, it may take years for the petitions for review to be resolved.

*Id.* at 1087-88. We therefore find that it *may* be the case that the Due Process Clause prohibits prolonged detention under § 1231(a)(6) without a bond hearing.

A.    Canon of Constitutional Avoidance and Our Construction of § 1231(a)(6)

Despite the constitutional concerns raised by Guerrero-Sanchez's detention under § 1231(a)(6), we decline to decide whether his continued confinement violated the Due Process Clause. "As a first inquiry, we must avoid deciding a constitutional question if the case may be disposed of on some other basis." *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 102 (3d Cir. 2008). We assume that Congress does not intend to pass unconstitutional laws—accordingly, "it is a cardinal principle of statutory interpretation . . . that when an Act of Congress raises a serious doubt as to its constitutionality, . . . [courts] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Diop*, 656 F.3d at 231 (quoting *Zadvydas*, 533 U.S. at 689). We therefore invoke the canon of constitutional avoidance so long as "the statute is found to be susceptible of more than one

construction." *Jennings*, 138 S. Ct. at 842 (quoting *Clark*, 543 U.S. at 385).

The Supreme Court has already determined that the text of § 1231(a)(6) is ambiguous as to the due process protections that it provides. *See Zadvydas*, 533 U.S. at 697 (holding that § 1231(a)(6) is ambiguous). This is the case because § 1231(a)(6), unlike other provisions in the INA, does not provide for detention for a specified period of time, uses the word "may" to describe the detention authority rather than "shall," and lacks an express exception to detention provided for in the provision. *See Jennings*, 138 S. Ct. at 844. The plain text of § 1231(a)(6) therefore invites us to apply the canon of constitutional avoidance in order to avoid the question of whether Guerrero-Sanchez's continued detention under that provision violates the Due Process Clause. *See Demore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

In order to avoid determining whether Guerrero-Sanchez's detention violates the Due Process Clause, we adopt the Ninth Circuit's limiting construction of § 1231(a)(6) that "an alien facing prolonged detention under [that provision] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community."[12]  *Diouf*, 634 F.3d at 1092. Critically, our

--------

[12] The Government must meet its burden in such bond hearings by clear and convincing evidence. *See Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011) ("Because it is improper to ask the [alien] to 'share equally with society the

holding today necessarily applies to *all* aliens detained under § 1231(a)(6), not just those, like Guerrero-Sanchez, who have reinstated removal orders under § 1231(a)(5) and are pursuing withholding-only relief. This is because "statutory language given a limiting construction in one context must be interpreted consistently in other contexts, 'even though other of the statute's applications, standing alone, would not support the same limitation.'" *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 140 (2005) (quoting *Clark*, 543 U.S. at 380).

Here, there is no basis in § 1231(a)(6) to fashion a class of aliens that is not explicitly enumerated in the provision—if we were to hold that only aliens like Guerrero-Sanchez were entitled to bond hearings, then we would be acknowledging and distinguishing a specific class of aliens that is not ostensibly recognized anywhere in the text or legislative history of the INA. *See Clark*, 543 U.S. at 378 ("To give [the words 'may be detained beyond the removal period,' in § 1231(a)(6)] a different meaning for each category [of aliens] would be to invent a statute rather than interpret one."). Such a reading of § 1231(a)(6) would be implausible, and would therefore constitute an inappropriate application of the canon

_____

risk of error when the possible injury to the individual'— deprivation of liberty—is so significant, a clear and convincing evidence standard of proof provides the appropriate level of procedural protection." (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))); *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) ("[W]e also hold that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community."), *cert. granted, judgement vacated on other grounds*, 138 S. Ct. 1260 (2018).

of constitutional avoidance. *See Jennings*, 138 S. Ct. at 843 ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases. Instead, the canon permits a court to 'choos[e] between competing *plausible* interpretations of a statutory text.'" (quoting *Clark*, 543 U.S. at 381)). Accordingly, our interpretation applies to *all* classes of aliens that are enumerated in § 1231(a)(6)—*i.e.*, aliens who are inadmissible under 8 U.S.C. § 1182, removable under 8 U.S.C. § 1227(a)(1)(C), (a)(2), or (a)(4), or who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal," 8 U.S.C. § 1231(a)(6)—because "[t]he operative language of § 1231(a)(6), 'may be detained beyond the removal period,' applies without differentiation to all three categories of aliens that are its subject." *Clark*, 543 U.S. at 378 (quoting 8 U.S.C. § 1231(a)(6)).

We emphasize, however, that aliens detained under § 1231(a)(6) are only entitled to a bond hearing after *prolonged* detention.[13] We therefore must determine *when* a detention becomes prolonged. In order to identify "the specific dictates

---

[13] Put differently, our decision today does not hold that Congress intended for § 1231(a)(6) to contain an immediate bond hearing at the instant that an alien's removal order becomes final. *See Diouf*, 634 F.3d at 1091 ("Our focus here . . . is on *prolonged* detention."). Furthermore, we emphasize that aliens are not necessarily entitled to *release* after prolonged detention. Rather, they are owed only a bond hearing before an immigration judge to determine if they pose either a flight risk or a danger to the community. An alien will be released only if the immigration judge answers both inquiries in the negative.

35

of due process" in this context, we apply the three-part test that the Supreme Court enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 355 (1976). That test provides that we weigh three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Under § 1231(a)(6), "[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound" and "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1091-92; *id.* at 1092 n.13 ("As a general matter, detention is prolonged [under § 1231(a)(6)] when it has lasted six months and is expected to continue more than minimally beyond six months."). This is because "the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues . . . ." *Diop*, 656 F.3d at 234; *see also Zadvydas*, 533 U.S. at 701 (providing that due process analysis is altered as "the period of . . . confinement grows").

Correspondingly, the fiscal and administrative burden on the Government of requiring a bond hearing before an immigration judge is diminished in light of our estimation that

36

the incidence of these hearings will be manageable since the vast majority of removal orders are executed well before six months.[14]   As such, "[t]he burden imposed on the [G]overnment by requiring hearings before an immigration judge at [the post-removal] stage of the proceedings is . . . a reasonable one." *Diouf*, 634 F.3d at 1092.   Indeed, in *Zadvydas*, the Supreme Court, while interpreting § 1231(a)(6) in a related context, adopted a presumption that aliens could be reasonably detained without a hearing for six months because there is "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months." 533 U.S. 678, 701 (citing Juris. Statement in *United States v. Witkovich*, O.T.1956, No. 295, pp. 8-9). We therefore adopt a six-month rule here—that is, an alien detained under

---

[14] *See, e.g.*, *United States v. Castro-Verdugo*, 750 F.3d 1065, 1074 (9th Cir. 2014) ("[T]he median time spent by defendants in immigration custody prior to a removal in Fall of 2012 (including people who did not concede removability) was 10 days, with 40 percent of aliens spending three days or less in immigration detention prior to their removal." (citing *Legal Noncitizens Receive Longest ICE Detention*, Transactional Records Access Clearinghouse (June 3, 2013), Table 3: Statistics on Detention Time by Detailed "Book-out" Reason, http://trac.syr.edu/immigration/reports/321/ (finding that, in November and December 2012, ninety-eight percent of detainees were removed within six-months after removal order was entered, and that post-removal median detention length was ten days and average detention length was twenty-seven days))).

§ 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody.[15]

B.     *Chevron* Deference

In interpreting § 1231(a)(6) to avoid the serious due process concerns identified above, we recognize that we are declining to defer to relevant DHS regulations. When a statute is ambiguous, we "normally apply *Chevron* deference to the agency's interpretation of the statute, so long as that construction was reasonable." *Romanishyn v. Attorney Gen. of U.S.*, 455 F.3d 175, 183 (3d Cir. 2006). However, although we consider the canon of constitutional avoidance to "defin[e] the scope of a congressional delegation in light of an agency's actual interpretation," *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 792 F.3d 281, 301 (3d Cir. 2015), we do not defer to an agency's interpretation of a statute that raise serious constitutional doubts. *See Miller v. Johnson*, 515 U.S. 900,

---

[15] However, we agree with the Ninth Circuit that "[i]f the 180-day threshold has been crossed, but the alien's release or removal is imminent . . . [then] the government [is not] required to afford the alien a [bond] hearing before an immigration judge." *Diouf*, 634 F.3d at 1092 n.13. We do so to ensure the uniform and national administration of bond hearings pursuant to § 1231(a)(6). *See, e.g.*, *Kahn v. INS*, 36 F.3d 1412, 1414 (9th Cir. 1994) ("The INA 'was designed to implement a uniform federal policy,' and the meaning of concepts important to its application . . . 'require[ ] a uniform federal definition.'" (quoting *Rosario v. INS*, 962 F.3d 1412, 1414 (9th Cir. 1994))). We emphasize that this exception is narrow, and that it applies only in instances where detention "is expected to continue more than minimally beyond six months." *Diouf*, 634 F.3d at 1092 n.13.

38

923 (1995) ("[W]e think it inappropriate for a court engaged in constitutional scrutiny to accord deference to [an agency's] interpretation of [a statute]."); *Rust v. Sullivan*, 500 U.S. 173, 207 (1991) ("It is thus implausible that, after *Chevron*, agency interpretations of ambiguous statutes will prevail even if the consequence of those interpretations is to . . . raise serious constitutional doubts" (quoting Cass R. Sunstein, *Law and Administration After Chevron*, 90 COLUM L. REV. 2071, 2113 (1990))); *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173-74 (2001) (refusing to apply *Chevron* deference where "significant constitutional questions [are] raised"); *Hernandez-Carrera*, 547 F.3d at 1249 ("It is well established that the canon of constitutional avoidance does constrain an agency's discretion to interpret statutory ambiguities, even when *Chevron* deference would otherwise be due."); *Nat'l Mining Ass'n v. Kempthorne,* 512 F.3d 702, 711 (D.C. Cir. 2008) ("This canon of constitutional avoidance trumps *Chevron* deference, and we will not submit to an agency's interpretation of a statute if it 'presents serious constitutional difficulties.'" (quoting *Chamber of Commerce v. FEC,* 69 F.3d 600, 605 (D.C. Cir. 1995)) (citation omitted)); *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001) ("*Chevron* principles are not applicable where a substantial constitutional question is raised by an agency's interpretation of a statute it is authorized to construe." (citation omitted)).

Such is the case here. The DHS regulations that implement the Government's detention authority under § 1231(a)(6) themselves "raise serious constitutional concerns." *Diouf*, 634 F.3d at 1091. These regulations— 8 C.F.R. §§ 241.4 and 241.13—provide administrative custody reviews after 90 days, 180 days, and 18 months, *see* 8 C.F.R.

39

§ 241.4(k)(2)(ii)-(iii), by DHS employees who are not ostensibly neutral decision makers such as immigration judges. Importantly, the regulations also place the burden on *the alien*, rather than the Government, to prove that he or she is *not* a flight risk or a danger to the society, *see* 8 C.F.R. § 241.4(d)(1), and "there is no appeal from [DHS's] . . . decision." 8 C.F.R. § 241.4(d); *see also* 8 C.F.R. § 241.13(g)(2).[16]

This procedure fails to account for the Supreme Court's admonition that "the Constitution may well preclude granting 'an administrative body the unreviewable authority to make determinations implicating fundamental rights.'" *Zadvydas*, 533 U.S. at 692 (quoting *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 450 (1985)). We therefore decline to apply *Chevron* deference to the Government's interpretation of § 1231(a)(6). *See Diouf*, 634 F.3d at 1091 (declining to defer to DHS regulations that implement post-removal detention).

## IV. CONCLUSION

As we have discussed throughout our decision, our holding today is in line with that of the Ninth Circuit, the sole

---

[16] In the narrow circumstances that an alien is determined to have "no significant likelihood of removal in the reasonably foreseeable future," 8 C.F.R. § 241.14(a)(1), and if ICE determines that he or she is "specially dangerous," then it refers that ruling to an immigration judge for review, who must conduct a "reasonable cause hearing" before making a merits determination, *id.* § 241.14(g). The immigration judge's determination on the merits may be appealed by either party to the BIA. *Id.* § 241.14(i)(4).

court of appeals to have also addressed this issue. *See Diouf*, 634 F.3d at 1082. *Diouf* is not controlling on us, yet it is instructive. We are also "reluctant to create [a] circuit split[]," and only do so "where a 'compelling basis exists.'" *Parker v. Montgomery Cty. Corr. Facility/Bus. Office Manager*, 870 F.3d 144, 152 (3d Cir. 2017) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 75 n.7 (3d Cir. 2017)). This reluctance is especially acute "where the rules at issue 'are best applied uniformly.'" *Padilla-Ramirez*, 882 F.3d at 836 (quoting *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003)). Here, the INA "certainly falls into this category" because it is "a comprehensive federal scheme that requires a nationally unified administration program." *Id.*; *see also Arizona v. United States*, 567 U.S. 387, 401 (2012) (describing federal immigration law as "a comprehensive and unified system"). Our decision today aligns this Court's law with that of our sister circuit, and therefore effectuates Congress's directive that "the immigration laws of the United States should be enforced vigorously and *uniformly*." Immigration Reform and Control Act of 1986, Pub.L. 99-603, § 115, 100 Stat. 3384 (emphasis added).

Here, Guerrero-Sanchez was detained by ICE from May 2015 to February 2017, and he was provided a bond hearing only after 637 days in civil detention. Pursuant to our limiting construction of § 1231(a)(6), he was owed a hearing because he was detained well beyond six months. According to the Government, Guerrero-Sanchez should not have received a bond hearing at any point before his withholding-only proceeding takes place, which is not scheduled until September 5, 2019. The Government contends that it may detain Guerrero-Sanchez under § 1231(a)(6) for, at a minimum, fifty-

three months without inquiry into the necessity of his detention. For all of the reasons discussed *supra*, we find to the contrary and hold that Guerrero-Sanchez's detention was unquestionably prolonged. We will therefore affirm on alternative grounds the District Court's decision to afford Guerrero-Sanchez a bond hearing.[17]

---

[17] Because we conclude that a bond hearing was statutorily required, and the Government withdrew its appeal of the District Court's determination at the bond hearing to release Guerrero-Sanchez subject to certain conditions, the District Court's order pertaining to Guerrero-Sanchez's release will be left undisturbed.

*Rafael Ignacio Guerrero-Sanchez*

*Nos. 16-4134 and 17-1390*

---

**RENDELL**, <u>Circuit Judge</u>, concurring:

I concur in the majority's reasoning and result but believe that neither 8 U.S.C. § 1226(a) nor § 1231(a) clearly addresses the detention of one whose removal order has been reinstated but who has filed for withholding of removal. The majority chooses to apply § 1231(a)(6) because, given the finality of a reinstated removal order, a decision as to whether Guerrero-Sanchez is to be removed from the United States is not "pending." While § 1226(a) may be intended to apply before a removal order is entered, the provision for bond hearings under § 1226(a) may be better suited to the instant situation, since withholding proceedings are protracted, and can remain pending for years. Two other Courts of Appeals have considered this issue, each reasoning thoughtfully to a different conclusion.[1] Thus, I submit that legislative

---

[1] In *Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017), the court found a reinstated removal order to be administratively final for the purpose of detention, despite the detainee's ongoing withholding proceedings, and thus found detention to be appropriate under § 1231(a). In *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016), the court reasoned that proceedings were not administratively final until the detainee's withholding proceedings had been adjudicated, and thus found § 1226(a) to apply.

clarification is needed in order to addresses the specific detention issue before us.[2]

Section 1231(a) anticipates that removal is certain, yet Guerrero-Sanchez's reinstated removal order is not administratively final, as his withholding proceedings are ongoing. *C.f.* Majority Opinion at 17. Indeed, nearly every Court of Appeals to have considered the issue of finality of a reinstated removal order has held that there is no administrative finality until the agency has adjudicated the request for withholding of removal. *See Guerra v. Shanahan*, 831 F.3d 59, 63–64 (2d Cir. 2016); *Jimenez-Morales v. Att'y Gen.*, 821 F.3d 1307, 1308 (11th Cir. 2016), *cert. denied sub nom. Jimenez-Morales v. Lynch*, 137 S. Ct. 685 (2017); *Ponce-Osorio v. Johnson*, 824 F.3d 502, 506–07 (5th Cir. 2016); *Luna-Garcia v. Holder*, 777 F.3d 1182, 1185–86 (10th Cir. 2015); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012); *but see Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir. 2017). *See also Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) (holding that an order is final when the alien is entitled to "no further process" before they are removed). Granted, Guerrero-Sanchez's removal order has been reinstated, and thus not subject to appeal. Nonetheless, it is not final in the true sense of the word.[3]

---

[2] Although we have construed § 1231(a)(6) to require a bond hearing after prolonged detention, § 1226(a) requires such a hearing at the outset to determine whether an alien can be detained, so the application of one section versus the other has significant ramifications.

[3] First, an alien subject to a reinstated removal order may not be removed from the United States until withholding proceedings have concluded and administrative proceedings

As the Majority notes, Guerrero-Sanchez was detained under § 1231(a)(6) for 637 days (approximately 21 months) while his withholding proceedings remained, and continue to remain, pending. Guerrero-Sanchez was detained by ICE in May of 2015 and his withholding-only proceedings are scheduled for September 5, 2019, after which it may take months for a final decision to be issued, subject to further appeals. Thus, Guerrero-Sanchez would potentially have been detained for over four years absent a bond hearing and grant

---

are truly final. Second, practically speaking, if an alien is granted withholding of removal to the designated country, he may never be removed at all, and thus removal contemplated by § 1231(a) is even less certain. Here, if Guerrero-Sanchez is granted withholding of removal to Mexico based on his reasonable fear of future persecution or his CAT claim, he may never be removed from the United States. Although prevailing on a withholding or CAT claim "would not prohibit [Guerrero-Sanchez's] removal from the United States to an alternative, non-risk country," Majority Opinion at 16, actual removal to a third, alternate country is rare. To do so, the U.S. Government must show a tie between the alien and the third country to satisfy the requirements of 8 U.S.C. §§ 1231(b)(2)(D) and (E), and that country must also be willing to accept the alien. *See, e.g.*, *Himri v. Ashcroft*, 378 F.3d 932, 936–38 (9th Cir. 2004) (the government did not carry its burden of showing that petitioners, Palestinians who lived in Kuwait but had Jordanian passports, who were entitled to withholding of removal to Kuwait, were removable to Jordan, nor did the government show that Jordan would be willing to accept petitioners). Often, no such alternate country exists, and the alien who is granted withholding of removal remains in the United States indefinitely.

3

of release. Alternatively, an initial bond hearing under § 1226(a) would release those aliens who should not be detained—those who neither pose a risk of flight nor danger to their communities—without detaining them for over 6 months before they can raise a due process challenge to the prolonged nature of their detention.[4] *See* Majority Opinion at 35-38.

Thus, I urge that legislative action is needed to clarify whether someone in Guerrero-Sanchez's position is statutorily entitled to a bond hearing.

---

[4] Although I recognize that the application of § 1226 to Guerrero-Sanchez would not automatically afford him a bond hearing due to his criminal conviction, *see* Majority Opinion at 17 n.6, mandatory detention under either section for many months, even years, could raise serious due process concerns.