RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

WALTER MELARA MARTINEZ,

*Petitioner-Appellant*,

*v.*

CHRISTOPHER LAROSE, et al.,

*Respondents-Appellees*.

No. 19-3908

─────────────

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 4:19-cv-01411—Jack Zouhary, District Judge.

Argued: January 30, 2020

Decided and Filed: July 27, 2020

Before: SILER, GIBBONS, and THAPAR, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Andrew A. Lyons-Berg, MCDERMOTT WILL & EMERY, LLP, Washington, D.C., for Appellant. Brian C. Ward, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Andrew A. Lyons-Berg, Paul W. Hughes, MCDERMOTT WILL & EMERY, LLP, Washington, D.C., Gino J. Scarselli, Richmond Heights, Ohio, Brian J. Hoffman, BRIAN J. HOFFMAN, LLC, Wooster, Ohio, Kenneth D. Myers, Cleveland, Ohio, for Appellant. Brian C. Ward, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

SILER, J., delivered the opinion of the court in which THAPAR, J., joined, and GIBBONS, J., joined in part. GIBBONS, J. (pp. 15–16), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

SILER, Circuit Judge. Petitioner Walter Melara Martinez (Melara) presents us with a question of statutory interpretation that has divided our sister circuits: Are aliens in withholding-only proceedings detained pursuant to 8 U.S.C. § 1226 or 8 U.S.C. § 1231? This question is significant because aliens detained under § 1226(a) are entitled to bond hearings before an immigration judge (IJ) under the federal regulations, while aliens detained under § 1231(a) do not have a right to a bond hearing. In addition to the statutory interpretation issue, Melara argues that after two years of confinement, his continued detention—absent an individualized determination before a neutral decision maker—violates his due process rights.

The district court dismissed the case. In resolving the statutory interpretation question, we hold that § 1231(a) provides the authority for detaining aliens in withholding-only proceedings. Further, because Melara's removal is reasonably foreseeable, his continued detention does not violate due process at this time under the framework set out in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Therefore, we affirm the district court's dismissal of Melara's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

I.

In 2008, Melara, a native and citizen of El Salvador, entered the United States illegally and was removed to El Salvador after being apprehended. Following his deportation to El Salvador, Melara lived with his common-law wife, Rosalia, in a rural area outside of the city of La Libertad and had two children. In 2016, Rosalia and the couple's two children immigrated legally to the United States and became lawful permanent residents. The couple planned for Rosalia to return to El Salvador in 2017 to marry Melara so he could begin the legal immigration process.

However, after Rosalia's departure to America, Melara's problems with the MS-13 gang began. In September 2017, after harassment from MS-13,[1] an associate of the gang recommended to Melara that he become an informant so that the harassment would stop. But after Melara refused to work with the gang, police officers came to Melara's home and beat him with the butts of their rifles.[2] A few days later, he received a call from a member of MS-13 who told Melara that he had to make a $500 payment to the gang or else he would be killed. After Melara failed to make the payment, two members of the gang went to his home, assaulted him, and threatened him again that he must pay the $500. Melara fled the area immediately after that confrontation.

To try to hide from MS-13, Melara stayed with his adult daughter in the city of Lourdes. While hiding out in his daughter's home, he received an anonymous call on his cell phone threatening that sooner or later the gang would find him and his family. Not long after the call, Rosalia informed Melara that a relative of hers with ties to MS-13 had spotted him attending church in Lourdes. Shortly after Rosalia's call, Melara fled to the United States.

In December 2017, Melara illegally reentered the United States. The government apprehended him and reinstated his 2008 removal order. After Melara expressed fear of returning to El Salvador, an asylum officer interviewed him and found that he had established a reasonable possibility of future torture. Consequently, Melara's case was referred to an IJ for a withholding-of-removal determination. The IJ found that Melara was not entitled to relief under the applicable laws and denied his application for withholding of removal. Further, after a colloquy with Melara, the IJ determined that Melara was choosing to waive appeal.[3] After he appealed to the Board of Immigration Appeals (BIA), the BIA found that Melara had waived his appellate rights and dismissed the appeal. The BIA also denied Melara's subsequent motion to

---

[1]Melara accuses MS-13 of controlling the road he took to work, charging him a toll for using the road, demanding that he transport members of the gang (which he refused to do), and running him off the road for disrespecting them.

[2]Melara alleges that some police officers work with MS-13 and that members of the gang have infiltrated the police.

[3]Melara's explanation is that he did not understand his appellate rights, as he was representing himself, and there was a translation error that led the transcript to misrepresent his understanding of his rights.

reconsider.  Following these adverse decisions, Melara filed petitions for review before this court, which stayed his removal and held the case in abeyance pending his BIA appeal on a motion to reopen.  However, subsequent to argument in this case, we vacated the stay, remanded Melara's withholding-only case to the BIA, and dismissed two of his three petitions for review.  Following remand, the BIA held that Melara did not knowingly and intelligently waive his right to appeal, so it vacated its prior order of dismissal and reinstated Melara's appeal.

Melara has remained in detention since the government took him into custody in December 2017.  In June 2019, Melara filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Northern District of Ohio seeking either release from detention or a bond hearing before a neutral decision maker.  He alleged that his continued detention without an individualized determination violates his due process rights under the Fifth Amendment to the United States Constitution.  The district court dismissed Melara's petition.  It held that 8 U.S.C. § 1226 does not apply to his detention and under the 8 U.S.C. § 1231(a) indefinite-detention standard, his due process claims fail because his removal is reasonably foreseeable.

## II.

"We review de novo a district court's denial of a § 2241 habeas petition." *Christian v. Wellington*, 739 F.3d 294, 298 (6th Cir. 2014).  Statutory interpretation is a question of law that is also subject to de novo review. *Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 433 (6th Cir. 2019).

## III.

### A.

Melara first argues that because he is detained pursuant to 8 U.S.C. § 1226(a), he is entitled to a bond hearing.  Respondents, conversely, contend that Melara is not entitled to a bond hearing because he is detained under 8 U.S.C. § 1231(a).  It suffices to say that the statutory scheme governing the detention of aliens in withholding-only proceedings "is not a model of clarity." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008).  Indeed, that

lack of clarity has created a split among our sister circuits. *Compare Guzman Chavez v. Hott*, 940 F.3d 867, 882 (4th Cir. 2019) ("[W]e agree with the district court that the relevant provisions of § 1226, rather than § 1231, govern the petitioners' detention"), *and Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016) (holding the same), *with Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 215-16, 219 (3d Cir. 2018) ("[W]e find that § 1231(a), the post-removal provision, is the more logical source of authority for Guerrero-Sanchez's detention."), *and Padilla-Ramirez v. Bible*, 882 F.3d 826, 833, 836-37 (9th Cir. 2017) (holding the same). Because we find the Third and Ninth Circuits' analyses to be more consistent with the plain text of the statutes, we hold that Melara is detained under § 1231(a).

1.

However, before addressing the statutory interpretation question, some background on the relevant statutes and regulations is required. When a previously deported alien reenters the United States illegally, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief . . . and the alien shall be removed under the prior order at any time after the reentry."[4] 8 U.S.C. § 1231(a)(5). Nevertheless, despite the absolute language of § 1231(a)(5), an alien with a reinstated removal order does have recourse to seek some protection from deportation: withholding of removal. *See* § 1231(b)(3)(A) ("Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."); *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 n.4 (2006).

That, of course, necessarily brings us to the question before the panel today: Is an alien in withholding-only proceedings detained under 8 U.S.C. § 1226(a) or § 1231(a)? Section 1226(a)

---

[4]In order to reinstate a prior order of removal, the government must prove: (1) "the alien has been subject to a prior order of removal," (2) "the alien is in fact an alien who was previously removed," and (3) "the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a)(1)-(3). In practice, this means obtaining the alien's prior removal order, establishing the alien's identity, and showing that the alien was not given permission to enter the United States. *Id.* The alien can prevent the reinstatement of his prior removal order by successfully challenging one or more of these requirements. *See Tilley v. Chertoff*, 144 F. App'x 536, 540–41 (6th Cir. 2005) (per curiam). In this case, however, Melara did not challenge the reinstatement of his prior order of removal.

states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1231(a)(1)(A), on the other hand, holds: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." The removal period is defined as beginning on the latest of three events: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." § 1231(a)(1)(B). Further, § 1231(a)(2) provides for mandatory detention of the alien during the 90-day removal period, and § 1231(a)(6) allows for the government to detain aliens past the 90-day removal period if they are removable and considered "unlikely to comply with the order of removal."

But for Melara, the most significant distinction between the two statutes is the availability of a bond hearing before an IJ. An alien detained pursuant to § 1226(a) is entitled to an individualized hearing before an IJ to determine whether detention is necessary during the course of his immigration proceedings. *See* 8 C.F.R. § 236.1(d)(1). But aliens detained under § 1231 are not entitled to bond hearings through the regulations governing detention. *See* 8 C.F.R. §§ 241.4, 241.13(a). Because the government considers Melara to be detained under § 1231, it has not afforded him a bond hearing before an IJ.

2.

Thus, we must ascertain whether the regulations entitle Melara to a bond hearing by determining the source of statutory authority for his detention. Because Melara raises a statutory interpretation issue, our analysis begins with the language of the statutes, and if the statutory language provides a clear answer, it will end there as well. *In re Application to Obtain Discovery for Use in Foreign Proceedings*, 939 F.3d 710, 723 (6th Cir. 2019) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). The split among our sister circuits largely comes down to the differing conceptions of the case. The Second and Fourth Circuits argue that § 1226 governs detention before the government has the authority to remove the alien from the

country, while § 1231 governs once the government obtains that authority. *See Guzman Chavez*, 940 F.3d at 875-76; *Guerra*, 831 F.3d at 62-63. Basically, their theory of the case is one of actual removability—*i.e.*, an alien in withholding-only proceedings is detained under § 1226(a) until there are no longer any legal impediments to removal. The Third and Ninth Circuits assert that aliens in Melara's circumstances are detained under § 1231(a) because an alien in withholding-only proceedings has already been adjudged to be removable—the only issue to be resolved in the withholding-only proceedings is the location to where the government can remove the alien. *See Guerrero-Sanchez*, 905 F.3d at 216; *Padilla-Ramirez*, 882 F.3d at 832. *See also Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020) ("In the deportation context, a final 'order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" (quoting 8 U.S.C. § 1101(a)(47)(A))). We agree with the Third and Ninth Circuits. It is clear from the plain text of the statutes and the implementing regulations that Melara is removable. The pending issue in his case is one of eligible locations for removal, not removability itself.

Section 1226(a) states that "an alien may be arrested and detained *pending a decision on whether the alien is to be removed* from the United States." § 1226(a) (emphasis added). Thus, the plain text of § 1226(a) is clear that it applies to the detention of aliens who are awaiting a decision on whether they are to be removed from the United States. Conversely, § 1231(a)(1)(A) mandates that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within [the removal period]." § 1231(a)(1)(A). Further, § 1231(a)(5), which applies to Melara and other aliens in his situation, explains that "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." § 1231(a)(5). It is clear from the plain text of these statutes that they are reconcilable. Section 1226(a) applies when an alien is awaiting a decision on whether he will be removed from the United States. Section 1231(a) applies when an alien has already received a final decision that he will be removed from the United States. Section 1231(a)(5) is clear that an alien in Melara's circumstances already has a final decision that he will be removed.

While the Second and Fourth Circuits object that it has not been decided whether an alien *actually* can be removed as long as he is in withholding-only proceedings, *see Guzman Chavez*, 940 F.3d at 876; *Guerra*, 831 F.3d at 62, this misstates the inquiry of withholding-only proceedings. Section 1231(b)(3)(A), which provides the statutory authority for withholding-of-removal claims, states that "the Attorney General may not remove an alien *to a country* if the Attorney General decides that the alien's life or freedom would be threatened *in that country* because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." § 1231(b)(3)(A) (emphasis added). This statute is clear that withholding-only proceedings solely concern whether an alien can be removed to a particular country, not whether the alien is removable. Indeed, § 1229a provides that "a proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be . . . removed from the United States." 8 U.S.C. § 1229(a)(3). Aliens in withholding-only proceedings are not entitled to proceedings under § 1229a. *See* 8 C.F.R. § 1208.2(c)(2); *see also* 8 U.S.C. § 1231(a)(5). Consequently, an alien in withholding-only proceedings, like Melara, cannot challenge whether the government can remove him; he may only challenge whether the government can remove him to a particular country. *See, e.g.*, *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 545 (6th Cir. 2003), *holding modified on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743 (6th Cir. 2006) ("Unlike an application for asylum, however, a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status, . . . it only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country."); 8 C.F.R. § 208.16(f) ("Nothing in this section . . . shall prevent the [government] from removing an alien to a third country other than the country to which removal has been withheld or deferred."). Clearly, Melara is not "pending a decision" on whether he is "to be removed from the United States." § 1226(a). Rather, the only pending decision is whether he can be removed to a specific country.[5] *Cf. Nasrallah*, 140 S. Ct. at 1691 ("A CAT order is not

---

[5]Because the plain text of the statutes provides the answer, we need not examine the structure. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion) ("The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." (internal citation omitted) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992))). Nevertheless, we agree with the Third and Ninth Circuits that the structure of § 1231 also supports the conclusion that aliens in withholding-only proceedings are detained under § 1231(a). *See Guerrero-Sanchez v.*

itself a final order of removal because it is not an order 'concluding that the alien is deportable or ordering deportation.' . . . An order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country. But the noncitizen still 'may be removed at any time to another country where he or she is not likely to be tortured.'" (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f))).

Moving away from the statutory text, because all four circuits to consider this issue have found whether the reinstated removal order is an administratively final decision provides a dispositive answer as to whether § 1226 or § 1231 applies, we feel it is necessary to address that question. The Second and Fourth Circuits held that the reinstated removal order is not administratively final. *See Guzman Chavez*, 940 F.3d at 880-81; *Guerra*, 831 F.3d at 63. Their concern was if they did not interpret § 1226(a) as the source of authority, it would result in the bifurcation of the definition of finality. *Id.* The essence of this argument is that if the reinstated removal order is considered to be "administratively final," it would be practically impossible for an alien to seek judicial review under 8 U.S.C. § 1252 after the conclusion of his withholding-only proceedings, due to the 30-day time limit. *Guzman Chavez*, 940 F.3d at 879-80. Because of that issue, "courts routinely have held . . . that a reinstated order of removal is not 'final' for purposes of judicial review until the agency completes adjudication of a noncitizen's request for withholding of removal." *Id.* at 880 (collecting cases). Therefore, if the reinstated removal order is considered "administratively final" for the purposes of § 1231 throughout the withholding-only proceedings, it would create an odd situation where the removal order would not be final for the purposes of judicial review under § 1252 but would be final for the purposes of detention under § 1231. The Second and Fourth Circuits preferred an interpretation that avoided such a scenario. *Id.* at 880-81; *Guerra*, 831 F.3d at 63. Hence, those circuits determined that the reinstated removal order was not "administratively final" for either detention or judicial review purposes during withholding-only proceedings. *Id.*

---

*Warden York Cty. Prison*, 905 F.3d 208, 216 (3d Cir. 2018) ("[T]he placement of § 1231(a)(5), which governs reinstated orders of removal, within the post-removal provision itself evidences Congress's intent that § 1231(a) governs the detention of aliens with reinstated orders of removal, even when they pursue withholding-only proceedings."); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017).

The Ninth Circuit did not share the Second and Fourth Circuits' concerns. While grappling with the bifurcation of finality issue, the Ninth Circuit explained:

> The agency already decided that Padilla-Ramirez "is to be removed from the United States," 8 U.S.C. § 1226(a), and a different, more limited decision is now pending in his withholding-only proceedings—namely, whether he may be removed to El Salvador. The agency has consummated its decision-making regarding the first issue, but not the second. It therefore is consonant with settled administrative legal principles to hold that Padilla-Ramirez's reinstated removal order (i.e., the agency's decision that he "is to be removed from the United States," *id.*) is final for detention purposes even though it lacks finality for purposes of judicial review of his withholding-only claim.

*Padilla-Ramirez*, 882 F.3d at 836. *Cf. Nasrallah*, 140 S. Ct. at 1691 ("[T]he immigration judge's or the Board's ruling on a CAT claim does not affect the validity of the final order of removal and therefore does not merge into the final order of removal."). We agree with the Ninth Circuit and find its explanation to be consistent with our own precedent.

In order for an agency action to be considered final in this circuit, two conditions must be met: (1) "the action must mark the consummation of the agency's decisionmaking process," and (2) "the actions must be one by which rights or obligations have been determined." *Hosseini v. Johnson*, 826 F.3d 354, 360 (6th Cir. 2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)) (internal quotation marks omitted). On the question of whether the government may remove Melara from the United States, the reinstated removal order is a consummation of the agency's decisionmaking process. He cannot challenge the prior removal order by seeking to have it reopened or reviewed. *See* 8 U.S.C. § 1231(a)(5). *See also Moreno-Martinez v. Barr*, 932 F.3d 461, 464-65 (6th Cir. 2019) ("When DHS reinstates a prior removal order . . . , DHS does not reissue the prior order (which would restart the 30-day period within which the alien may file a petition for review) but reinstates the prior order from its original date. . . . Because this collateral challenge to the removal order was filed well after the 30-day deadline passed, we lack jurisdiction to grant Petitioner's proposed remedy—i.e., to reopen the underlying removal order." (internal quotations omitted)). Additionally, the reinstated removal order has determined that Melara has no right to remain in the United States. *Cf. Hosseini*, 826 F.3d at 362 (holding that the agency determined Hosseini's "rights or obligations" when it "denied [him] the right to live . . . in the United States"). The government may deport him when it finds a country to which

he can be removed.  The withholding-only proceedings merely determine whether he may be returned to a particular country, not whether he may be removed from the United States.  Thus, it is clear that with regard to the question of whether the government can remove Melara, there has been an administratively final decision.[6]

Lastly, the Fourth Circuit expressed concern that if § 1231 were determined to be the source of authority, "it would put government officials—routinely and completely foreseeably—in dereliction of their statutory duties" in an entire class of cases.  *Guzman Chavez*, 940 F.3d at 877-78.  This is because § 1231 limits the removal period to 90 days.  § 1231(a)(1)(A); *see also Diouf v. Mukasey*, 542 F.3d 1222, 1231 (9th Cir. 2008) ("The purpose of the 90-day period is to afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal.").  The Fourth Circuit considered that problematic because "it is obvious that withholding-only proceedings take substantially longer than 90 days," *Romero v. Evans*, 280 F. Supp. 3d 835, 847 (E.D. Va. 2017), and did not believe that Congress intended § 1231(a)(6), the provision allowing detention beyond the removal period, to apply to an entire class of cases.  *Guzman Chavez*, 940 F.3d at 877-78.  We respectfully disagree with the Fourth Circuit.  We are unwilling to depart from the plain text of the statute when Congress has included a solution in that very statute to the problem the Fourth Circuit identified—§ 1231(a)(6), which allows the government to detain

---

[6]Additionally, Melara argues that because this court remanded his petitions for review back to the BIA, the reinstated removal order cannot be administratively final.  This argument is connected to Melara's prior claim that because we stayed his removal in a separate case, his reinstated removal order cannot be administratively final under 8 U.S.C. § 1231(a)(1)(B).  He had previously found his support in *Bejjani v. I.N.S.*, 271 F.3d 670 (6th Cir. 2001), *abrogated by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

But neither of these premises is sound.  First, *Bejjani* is no longer good law.  Second, Melara's interpretation of § 1231(a)(1)(B) is inconsistent with its plain text.  With regard to his stay argument, the statute states: "The removal period begins on the latest of the following . . . [i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order."  § 1231(a)(1)(B)(ii).  The defect in Melara's interpretation of the statute is with the language "[i]f the *removal order* is judicially reviewed." *Id.* (emphasis added).  We cannot judicially review the reinstated removal order by the express terms of § 1231(a)(5).  *Cf. Moreno-Martinez v. Barr*, 932 F.3d 461, 464-65 (6th Cir. 2019).  Our inability to review the reinstated removal order is also fatal to Melara's claim that the remand makes it non-final.  *See* § 1231(a)(1)(B)(i).  The language in the order remanding the case is consistent with our analysis here.  In that order, we stated: "The effect of the remand will be to render the BIA's orders non-final *for purposes of judicial review*."  As the Ninth Circuit stated: "[A] reinstated removal order . . . [can be] final for detention purposes even though it lacks finality for purposes of judicial review of [the] withholding-only claim." *Padilla-Ramirez*, 882 F.3d at 836.  That is exactly the case here.

aliens past the 90-day removal period if they are removable and considered "unlikely to comply with the order of removal." Accordingly, we hold that § 1231(a) provides the statutory authority for Melara's detention, which means he has no right to a bond hearing before a neutral decision maker under the federal regulations.

B.

Alternatively, Melara contends that even if he is not entitled to a bond hearing on regulatory grounds, he is entitled to a bond hearing or release from custody because the length and indefiniteness of his ongoing detention would otherwise violate his due process rights.[7] The Supreme Court laid out a framework in *Zadvydas v. Davis* that guides our analysis of Melara's claim. In that case, Zadvydas had been held in detention under § 1231(a) for years pending his deportation because the government could not find a country that would accept his removal. *Zadvydas*, 533 U.S. at 682, 684-685. Zadvydas filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his continued detention as unconstitutional. *Id.* at 684-85. In applying the canon of constitutional avoidance to § 1231(a), the Supreme Court noted:

> We have found nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.

*Id.* at 699. The Supreme Court thus applied a presumptively reasonable six-month period for the government to effectuate removal. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* But the Court did explain that the six-month presumption "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be

---

[7]Melara alleges both a general due process violation under a balancing analysis and a claim under *Zadvydas v. Davis*. Melara's general due process violation claim relies largely on *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003), which we recently held was abrogated by *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). *See Hamama v. Adducci*, 946 F.3d 875, 879 (6th Cir. 2020) ("*Ly* did not survive *Jennings*."). To the extent Melara's general due process claim does not rely on *Ly* and is not an indefinite-detention claim under *Zadvydas*, it is baseless.

held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

The district court here held that after his ongoing appeals run their course, "nothing impedes Melara's removal." Thus, according to the district court, because Melara is not stuck in "removable-but-unremovable limbo," "he will be subject to nearly immediate removal" once his appeals are resolved. Consequently, it held that Melara failed to demonstrate a due process violation.

On appeal, Melara argues that there is no significant likelihood of removal in the reasonably foreseeable future because he has been in detention for roughly two years and his case before the Sixth Circuit, at the time of the briefing in this matter, was still being held in abeyance. Further, Melara explains that the median time for an appeal in the Sixth Circuit is around seven months and if he prevails, his case will have to wind back through the immigration courts. Nevertheless, we agree with the district court that Melara's removal is reasonably foreseeable. If Melara does not prevail in his pending actions before this court and the BIA, nothing should impede the government from removing him to El Salvador.[8] If Melara does prevail before this court or the BIA, he may refile his § 2241 petition and argue at that point that there is no significant likelihood of removal in the reasonably foreseeable future.[9] *See id.* at 701 (explaining that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink").

---

[8]About two months after argument in this matter, Melara noted in a filing that El Salvador had closed its borders to deportees "until further notice." From all reports, this appears to be a temporary measure to combat the spread of the COVID-19 pandemic. *See El Salvador suspends deportations from U.S., Mexico over coronavirus*, Reuters (March 18, 2020, 7:33 PM), https://www.reuters.com/article/us-health-coronavirus-el-salvador-deport-idUSKBN21543B. If this measure proves to be more permanent than anticipated, Melara may refile his § 2241 petition and attempt to make out a *Zadvydas* claim. Considering the potential number of detainees who hail from countries temporarily closing their borders due to the pandemic, we are reluctant to publish a sweeping ruling without the issue first being fully litigated and our having all the necessary facts.

[9]It is unclear from the district court's order if the dismissal of Melara's petition was with prejudice or without prejudice. We will construe the dismissal as one that is without prejudice. *Cf. Williams v. Barr*, 786 F. App'x 71, 72 (8th Cir. 2019) (per curiam).

As a final matter, it seems necessary to address whether due process requires a bond hearing after a certain amount of time in detention. While we concur with the Third and Ninth Circuits that Melara and similarly situated petitioners are detained under § 1231(a), we are not imposing a general rule that aliens detained under § 1231(a) must receive a bond hearing after a specific lapse of time, as those circuits did. *See Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1143 (9th Cir. 2020) ("[W]e conclude that the district court did not abuse its discretion in . . . concluding that the plaintiffs were likely to succeed on their claim that they are constitutionally entitled to individualized bond hearings before a neutral decisionmaker."); *Guerrero-Sanchez*, 905 F.3d at 226 ("We therefore adopt a six-month rule here—that is, an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after six months (*i.e.*, 180 days) of custody."); *Diouf*, 634 F.3d at 1092 ("[A]liens who are denied release in their 180-day reviews must be afforded the opportunity to challenge their continued detention in a hearing before an immigration judge."). At argument, Melara conceded that a bond requirement would be out of place in a post-*Jennings* world. We agree and are reluctant to graft a bond-hearing requirement onto a statute absent language supporting such a requirement. *Cf. Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases."); *Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (criticizing the district court for "creat[ing] out of thin air a requirement for bond hearings that does not exist in the statute"). Moreover, the Supreme Court has had occasion to consider the constitutional implications of indefinite detention under § 1231(a). In applying the canon of constitutional avoidance, the Court offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard we applied in this case. We see no cause to question the wisdom of that decision.

## IV.

Because the authority for Melara's detention arises out of 8 U.S.C. § 1231(a) and his removal is reasonably foreseeable, we affirm the district court's dismissal of Melara's petition.

———————————————

**DISSENTING IN PART**

———————————————

JULIA SMITH GIBBONS, Circuit Judge, dissenting in part.  I agree with the majority that § 1231(a) provides the authority to detain aliens, like Melara, in withholding-only proceedings.  I dissent because I believe the majority's decision undervalues due process protections for those facing removal.  Melara has already been detained for nearly two-and-a-half years and that detention will continue for an indeterminate period.  I disagree with the majority's conclusion that Melara's removal is reasonably foreseeable.  And because I do not believe Melara's removal is reasonably foreseeable, I believe his continued detention violates the Due Process Clause.

The Supreme Court harbors "'serious doubt[s]' as to [§ 1231(a)(6)'s] constitutionality." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  Because "indefinite, perhaps permanent, detention" under § 1231(a)(6) poses a "serious constitutional threat," § 1231(a)(6) "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  *Id.*  "[T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal."  *Id.* at 699.  The Court provided that a detention of six months is presumptively reasonable, but after that, "[if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.* at 701.

Melara has provided good reason to believe that there is no significant likelihood of removal.  He has already been detained for over twenty-eight months.  And his detention will continue for an uncertain and indeterminate period.  On February 12, 2020, another panel of this court remanded Melara's case to the BIA for further investigation or explanation.  The BIA subsequently vacated its prior order dismissing Melara's appeal and ordered new briefing.  The BIA must now decide the merits of Melara's claims that he will be subject to persecution if deported to El Salvador, and Melara may appeal the BIA's decision to this court.

The majority's response is to offer Melara the opportunity to file a second § 2241 petition to make out a *Zadvydas* claim if the likelihood of removal dissipates. But a second petition is unnecessary because the current extended period of detention and the likelihood that Melara will not be removed in the foreseeable future implicate Melara's due process rights today. *See Zadvydas v. Davis*, 533 U.S. at 689, 699–701; *Rosales-Garcia v. Holland*, 322 F.3d 386, 408–15 (6th Cir. 2003). *Zadvydas* counsels that "what counts as the 'reasonably foreseeable future'" should shrink "as the period of prior postremoval confinement grows." 533 U.S. at 701. The length of Melara's future detention, however, has *increased* during the pendency of this appeal. The task of determining when a noncitizen's removal is reasonably foreseeable will present some difficult cases; but a case where a noncitizen detained for over two years faces indeterminate and ever-increasing lengths of detention is not among them.

Melara's removal is not reasonably foreseeable. Accordingly, the Due Process Clause does not countenance his continued detention. Because the majority holds otherwise, I respectfully dissent.