RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0364p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

WALTER MELARA MARTINEZ,

         *Petitioner-Appellant*,

  *v.*

CHRISTOPHER LAROSE, et al.,

         *Respondents-Appellees*.

No. 19-3908

————————————

On Petition for Rehearing En Banc

United States District Court for the Northern District of Ohio at Youngstown.
Nos. 4:19-cv-01411; 4:19-cv-01411—Jack Zouhary, District Judge.

Decided and Filed:  November 19, 2020

Before: SILER, GIBBONS, and THAPAR, Circuit Judges.

————————————

**COUNSEL**

**ON PETITION FOR REHEARING EN BANC:**  Andrew A. Lyons-Berg, Paul W. Hughes, MCDERMOTT WILL & EMERY, LLP, Washington, D.C., Gino J. Scarselli, Richmond Heights, Ohio, Brian J. Hoffman, BRIAN J. HOFFMAN, LLC, Wooster, Ohio, Kenneth D. Myers, Cleveland, Ohio, for Appellant.  **ON RESPONSE:**  Brian C. Ward, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

      The panel issued an order denying the petition for rehearing en banc.  THAPAR, J. (pp. 3–7), delivered a separate opinion concurring in the denial of the petition for rehearing en banc.  MOORE, J. (pp. 8–12), delivered a separate opinion dissenting from the denial of the petition for rehearing en banc, in which STRANCH and DONALD, JJ., joined.

———————————

## ORDER

———————————

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision. The petition then was circulated to the full court.[*] Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied. Judge Gibbons would grant rehearing for the reasons stated in her dissent.

---

[*]Judge Readler recused himself from participation in this decision.

————————————

**CONCURRENCE**

————————————

THAPAR, Circuit Judge, concurring in the denial of rehearing en banc. When an alien attempts to cross our border illegally, the Due Process Clause does not require the government to release him into the United States. Instead, the government may detain him while it arranges for his return home. Since we correctly denied the petitioner's request for a bond hearing, there is no reason to take this case en banc. I write separately to discuss why recent Supreme Court authority (1) supports the decision in this case, and (2) undermines our court's decision in *Rosales-Garcia v. Holland*, 322 F.3d 386 (6th Cir. 2003) (en banc).

The Supreme Court has told us that aliens living *in* the United States without authorization are entitled to constitutional due process. But aliens who have not yet entered the country are entitled only to such process as the political branches afford them. The Supreme Court reaffirmed this century-old distinction earlier this year. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1981–83 (2020). And this simple distinction controls the outcome for the petitioner here.

\*       \*       \*

Walter Melara Martinez is a citizen of El Salvador whom authorities apprehended when he tried to illegally cross our border a second time. The government has wanted to send Melara home for almost three years; the only thing stopping his removal is Melara himself. He says that if he returns to El Salvador, he will be tortured or killed by MS-13. So he's asked our government for help under the Convention Against Torture to locate another country that is willing to admit him.

An immigration judge heard and rejected Melara's claim twice. The judge found that Melara had not suffered persecution on protected grounds and that he failed to demonstrate a likelihood of torture. But Melara has not been sent home. That's because he filed multiple appeals with the Board of Immigration Appeals, two petitions for review in this court, a request to hold our review in abeyance, a motion for reconsideration, a motion to reopen, a petition for habeas corpus, an appeal of the order denying habeas relief, and now a petition to reconsider that denial en banc. Melara has been confined while these proceedings run their course—about 34 months

altogether.  In his view, that's longer than the Due Process Clause will tolerate, even though the decision to perpetuate those same proceedings was Melara's alone.  Yet he says our Constitution requires his release into the United States, or at least entitles him to a hearing to challenge his confinement.

Melara misunderstands our immigration laws.  The Supreme Court distinguishes between individuals coming from abroad who have "effected an entry" into the United States and those, like Melara, who were "stopped at the border."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).  That distinction is "critical" when assessing claims of indefinite detention.  *Zadvydas*, 533 U.S. at 693.  In *Zadvydas*, the Court held that aliens who have entered the country, even illegally, have a constitutional due process right against indefinite detention, "for the Due Process Clause applies to all 'persons' within the United States."  *Id.*  But individuals apprehended during an illegal entry have no right to constitutional due process because they remain, as a legal matter, "outside of our geographic borders"—most are free to leave at any time.  *Id.*; *see also Kaplan v. Tod*, 267 U.S. 228, 230 (1925).  Instead, individuals stopped at our border are entitled only to the process afforded them by the political branches.  *Zadvydas*, 533 U.S. at 693; *Mezei*, 345 U.S. at 212.[1]

This rule traces back at least to 1953 when *Mezei* was decided.  Ignatz Mezei was an immigrant who had lived in the United States (lawfully) for 25 years but was denied entry after returning from an extended stay in Europe.  345 U.S. at 208.  His home country refused to accept his return, so Mezei was detained on Ellis Island while the government arranged for another country to take him in.  *Id.* at 209.  After 21 months in custody, Mezei filed a habeas petition claiming that the Attorney General had violated his rights by confining him indefinitely without a hearing.  *Id.*

---

[1]Even if Melara had effected an entry into the United States—thus entitling him to constitutional due process—his claim would still fail.  The Court in *Zadvydas* warned that the Due Process Clause might forbid periods of detention that are "indefinite, perhaps permanent."  *Zadvydas*, 533 U.S. at 692.  Melara is detained only during this litigation; if his claim fails, he will be returned to El Salvador.  His confinement therefore has an "obvious termination point"—one, to a large extent, of his own choosing—and does not raise the specter of indefinite detention.  *Id.* at 697.  The dissent's position would allow aliens stopped at our border to obtain release into the country simply by pursing endless rounds of litigation.  Such a "right" is found nowhere in the Constitution.

The Supreme Court disagreed. The Court noted that an alien living within the United States—even illegally—is entitled to constitutional due process during removal. *Mezei*, 345 U.S. at 212. "But an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* Despite Mezei's prior lawful residence in the United States and his then-present confinement on Ellis Island, he was treated for constitutional purposes "as if stopped at the border" without having entered the country. *Id.* at 215. And because Congress had authorized the Attorney General to hold Mezei indefinitely during his removal proceedings, his ongoing detention did not violate the Constitution. *Id.* at 215–16.

To the extent that our circuit in *Rosales-Garcia* erased the constitutional distinction between individuals who have entered our country and those who haven't, that decision is no longer good law. 322 F.3d 386. The majority considered *Mezei* to have been abrogated, either by the reasoning of *Zadvydas* or through a line of Supreme Court precedent beginning with *United States v. Salerno*, 481 U.S. 739 (1987). *See Rosales-Garcia*, 322 F.3d at 404–08.

But in *Thuraissigiam*, the Supreme Court reaffirmed *Mezei*'s due process analysis*,* as well as the constitutional distinction between aliens who have entered the United States and those who haven't.**[2]** 140 S. Ct. at 1982–83. For aliens stopped at the border, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 1982. *Thuraissigiam* also made clear that "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). Thus, the majority opinion in *Rosales-Garcia* was mistaken when it concluded that *Mezei* had been "fatally undermined" by later Supreme Court cases. *Rosales-Garcia*, 322 F.3d at 415.

*Mezei* therefore remains binding precedent for our court—which means the Due Process Clause does not forbid Melara's detention. When Melara tried to enter the United States illegally

---

**[2]**The dissent attempts to distinguish the due process analysis in *Mezei* as turning on national security interests that are not present here. The *Mezei* Court's due process analysis did not turn on this distinction. What's more, although *Mezei* may be a national security case, *Thuraissigiam* isn't. And like *Mezei* before it, *Thuraissigiam* reaffirmed that aliens attempting to enter our country illegally only have the due process rights afforded them by Congress.

in 2017, immigration officials immediately apprehended him.  That puts Melara squarely into the category of individuals who have not entered the country and who therefore lack the protections of constitutional due process.  *Zadvydas*, 533 U.S. at 693; *Mezei*, 345 U.S. at 212.  The question, then, is whether Melara's prior residence in the United States or his current detention within our borders takes him out from under *Mezei*'s rule.  The answer is clearly no, since the same was true in *Mezei*.  345 U.S. at 213 ("Neither [Mezei]'s harborage on Ellis Island nor his prior residence here transforms this into something other than an exclusion proceeding.").

Thus, Melara (like any other alien detained at the border) "has only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 140 S. Ct. at 1983.  Congress has "plenary power" to establish immigration law, and a judicial decision to grant Melara the relief he seeks would intrude upon this "sovereign prerogative."  *See* U.S. Const. art. I, § 8, cl. 4; *Thuraissigiam*, 140 S. Ct. at 1982; *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952).[3] Congress chose to give fewer legal rights to aliens removed previously than to those who face removal for the first time.  When an individual is caught illegally entering the United States after being removed in the past, the government rarely issues a new removal order.  In most cases, the government is required by statute to reinstate the prior order "from its original date," which creates a time bar to any legal challenge.  *Moreno-Martinez v. Barr*, 932 F.3d 461, 464 (6th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(5)).

So it was with Melara.  When immigration officials caught him crossing our border in 2017, they reinstated his 2008 removal order.  The political branches have afforded Melara and other repeat immigration violators little recourse to challenge their detention and removal.  Providing Melara more process by court order would intrude upon Congress's authority and

---

[3]The dissent relies heavily on *Clark v. Martinez*, 543 U.S. 371 (2005), to contest the proposition that the duration of Melara's confinement is not subject to *constitutional* restrictions.  But *Clark* is a statutory interpretation case, not a constitutional due process case.  *Id.* at 380–81.  It does not come close to suggesting that the Constitution supplies aliens like Melara procedural protections beyond those afforded by the political branches.  Indeed, it explicitly acknowledges that the constitutional concerns animating *Zadvydas* might be absent in a case involving inadmissible aliens subject to removal.  *Id.* at 380 ("The Government . . . argues that the statutory purpose and the constitutional concerns that influenced our statutory construction in *Zadvydas* are not present for aliens . . . who have not been admitted to the United States.  Be that as it may, it cannot justify giving the same detention provision a different meaning when such aliens are involved.").  If *Clark* were a constitutional due process case both the *Thuraissigaim* majority and dissent would have grappled with it.  Neither did.

exceed our own under Article III. In this area especially, "courts cannot substitute their judgment for the legislative mandate." *Mezei*, 345 U.S. at 216. We were therefore correct to reject Melara's claim, and en banc review is not warranted.

———————————

**DISSENT**

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting from the denial of rehearing en banc. This court should grant Walter Melara Martinez's petition for rehearing en banc. The panel majority's decision in *Martinez v. LaRose*, 968 F.3d 555 (6th Cir. 2020), which held that Melara's 688 days of detention did not violate due process, contradicts Supreme Court and Sixth Circuit precedent and involves an area of exceptional public importance. In determining that Melara's detention was reasonable under the framework set out in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the panel majority erroneously discounted from its reasonability calculations the twenty-three months that the government had already detained Melara. Moreover, the panel majority improperly required that Melara must prevail in his appeals from the IJ's determination that he is not eligible for withholding-of-removal relief in order for *Zadvydas*'s due process protections to be available. As these holdings run contrary to binding precedent and implicate one of the most basic and fundamental rights that our Constitution provides, the right to be free from unlawful detention, this case presents legal questions of exceptional importance and grave consequences.

In *Zadvydas*, the Supreme Court addressed when an alien's continued detention under 8 U.S.C. § 1231(a)(6) contravenes due process. After a presumptively reasonable period of six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable . . . . [T]he alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Id.* at 699–700. The Supreme Court explicitly instructed habeas courts to "shrink" what counts as the reasonably foreseeable future "as the period of prior postremoval confinement grows." *Id.* at 701. Melara argued that his almost twenty-three months of detention coupled with his ongoing appeal process for his withholding-only claim provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The

majority's failure to consider the increasing length of Melara's future detention coupled with his already prolonged detention contradicts the Supreme Court's direction in *Zadvydas*.

Second, our precedent also subjects the entire process to "the constitutional requirement of reasonability," including time taken during appeals and petitions for relief. *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003), *abrogated in part by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Ly*, we explicitly foreclosed subjecting aliens to indefinite detention due to their pursuit of available avenues of relief. *Id.* ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.").**[1]** The majority in *Martinez* noted that we recently held that *Jennings* abrogated *Ly*, *see Martinez*, 968 F.3d at 564 n.7 (*citing Hamama v. Adducci*, 946 F.3d 875, 879 (6th Cir. 2020) ("*Ly* did not survive *Jennings*.")); however, as one judge in *Hamama* stated, *Jennings* "did not disturb *Ly*'s discussion of constitutional principles" and *Jennings* "explicitly declined to reach [the] constitutional issues" raised in *Ly*. *Hamama*, 946 F.3d at 882–83 (White, J., concurring in the judgment only); *see Jennings*, 138 S. Ct. at 851 ("[W]e do not reach [the constitutional] arguments."). Consequently, the *Martinez* majority's approach is contrary to both Supreme Court and Sixth Circuit precedent.

As the panel dissent aptly observed, "the [*Martinez*] majority's decision undervalues due process protections for those facing removal," and correctly concluded that Melara's then "extended period of detention and the likelihood that Melara will not be removed in the foreseeable future implicate Melara's due process rights *today*." *Martinez*, 968 F.3d at 566–67 (Gibbons, J., dissenting in part) (emphasis added). The Due Process Clause does not tolerate "indeterminate

---

**[1]**The concurrence takes issue with our precedent that forecloses punishing aliens with indefinite detention due to their non-frivolous pursuit of applicable remedies, characterizing it as a "right" to "obtain release into the country." This characterization mistakes the focus of our precedent and the Due Process Clause, which prevents unlawful *detention*. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated. . . . [W]e believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether . . . the Constitution permits detention that is indefinite and potentially permanent.") (internal citations omitted); *see also German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020) (concluding that counting "an alien's good-faith challenge to his removal against him," even "his appeals or applications for relief" that "have drawn out the proceedings," would effectively be a punishment and such "extra time" cannot be considered reasonable for detention).

and ever-increasing lengths of detention." *Id.* at 567 (Gibbons, J., dissenting in part). The majority's ruling has grave consequences for the many detainees who, like Melara, are pursuing non-frivolous claims that they will face torture or persecution if released to a particular country. The majority is effectively punishing them for pursuing applicable legal remedies. The serious liberty interests implicated by this case merit en banc review.

The panel majority's decision on its own is cause for great concern; however, Judge Thapar's attempt to further undercut Melara's and other similarly situated detainees' due process protections necessitates refutation. I write to point out our court's binding precedent that establishes fundamental protections for persons detained in our sovereign territory and undercuts the unwarranted conclusions of the concurrence. Furthermore, I reject as premature the concurrence's opinion on a matter not raised before the court.

First, the Supreme Court has already squarely addressed whether inadmissible aliens like Melara are entitled to habeas review to determine whether their detention is no longer reasonable under *Zadvydas*'s framework. In *Clark v. Martinez*, the Court expressly held that its construction of 8 U.S.C. § 1231(a)(6) for aliens who had previously been admitted to the United States also applies to "the category of aliens 'ordered removed who [are] inadmissible under [§ ]1182,'" *i.e.*, aliens like Melara who are allegedly stopped at the border. 543 U.S. 371, 378 (2005); *see also Rosales-Garcia v. Holland*, 322 F.3d 386, 408 (6th Cir. 2003) (en banc) ("We therefore must conclude that § 1231(a)(6), as construed in *Zadvydas* does not authorize the INS to detain Petitioner[, an inadmissible alien,] indefinitely[.] We thus agree with the petitioners that we should apply [§ 1231(a)(6)] to them with the reasonableness limitation that the Court read into that provision in *Zadvydas*."); *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) (noting that the Court has already addressed "*how long* a noncitizen may be detained during removal proceedings" in such cases as *Zadvydas*, *Clark*, and *Jennings*) (Kavanaugh, J., concurring). The Supreme Court's opinion in *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), neither addressed nor disturbed this holding. Thus, *Thuraissigiam* cannot do the work that Judge Thapar's concurrence asks it to do in attempting to undermine *Rosales-Garcia* and remove Melara from *Zadvydas*'s protection.

Second, Judge Thapar's reliance on *Thuraissigiam* and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), to undermine this court's constitutional considerations in *Rosales-Garcia* is misplaced.  In both *Thuraissigiam* and *Mezei* the Court analyzed the due process protections of noncitizens in distinctly different postures than Melara and the aliens in *Rosales-Garcia*.  In *Mezei*, the Court's analysis centered on the fact that Mezei sought admission to the United States and that he had been excluded under *emergency* regulations by Congress that *expressly* authorized the President "to impose additional restrictions on aliens entering or leaving the United States during periods of international tension and strife."  345 U.S. at 210.  Key to the Court's determination that Mezei's detention did not "deprive[] him of any statutory or constitutional right" was that his "exclusion proceeding" was "grounded on danger to the national security."  *Id.* at 215–16.  In contrast, the government is not detaining Melara under any such emergency power, nor has Melara been determined to be dangerous or a national security threat.  In *Thuraissigiam*, the Court considered the procedural due process rights that could be afforded to an alien seeking admission to the United States in his pre-removal hearings, not an alien already ordered removed who challenges the unlawfulness of his continued detention.  140 S. Ct. at 1964.  The Supreme Court has not addressed what procedural due process requires for a noncitizen in Melara's position.  *See Jennings*, 138 S. Ct. at 851 (noting that the Court did not reach the constitutional arguments of when prolonged detention violates an alien's due process rights).  Furthermore, our opinion in *Rosales-Garcia* did not address how much process was due to such aliens; we concluded only that "our Constitution [does not] permit persons living in the United States—whether they can be admitted for permanent residence or not—to be subjected to *any* government action without limit."  322 F.3d at 410; *see also Zadvydas*, 533 U.S. at 695 ("[Decisonmaking by the Executive and Legislative Branches in the immigration context] is subject to important constitutional limitations. . . . [W]e nowhere deny the right of Congress to remove aliens[ or] to subject them to supervision with conditions when released from detention.") (internal citations omitted).  That conclusion remains true today.  It is our duty to ensure that the government's actions do not cross the bounds that our Constitution expressly delineates.

Finally, Judge Thapar's advance expressions of his legal judgment on an issue not pressed before this court are untimely dicta. Although the Supreme Court decided *Thuraissigiam* before the panel issued its decision in *Martinez*, neither party brought the case to the panel's attention in a Rule 28(j) letter, nor did the panel address it in its opinion. Moreover, neither party raised the decision in their briefing on the petition for rehearing en banc or the response. Any attempt to decide the status of binding en banc precedent should be done properly with briefing and concerted discussion by the full en banc court. It is not appropriate to attempt to overturn our established precedent on the basis of the musings of one judge concurring in the denial of a petition for rehearing, especially when that position has been rejected by the full en banc court.

In sum, the panel majority's decision conflicts with prior precedent and is an error of exceptional public importance. Because I do not believe that our Constitution countenances the continued indeterminate detention of any person within our borders without due process, I respectfully dissent from the denial of rehearing en banc.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk